## EQUITABLE MORTGAGE COMPANY *v.* WATSON.

The evidence being insufficent to support the verdict, the court erred in overruling the motion for a new trial.

Argued November 24, — Decided December 14, 1903. Rehearing denied January 12, 1904.

Complaint. Before Judge Reagan. Monroe superior court. May 27, 1903.

*Payne & Tye, J. A. Noyes,* and *Cabaniss & Willingham,* for plaintiff. *R. L. Berner,* for defendant.

FISH, P. J. The Equitable Mortgage Company sued Mrs. Watson on a promissory note for the sum of $2,472.50 principal, besides interest and attorney's fees, and prayed for a general judgment and for a special lien upon a certain tract of land which it alleged had been conveyed to it as security for the debt. The defendant filed several pleas, in two of which she alleged that the debt was infected with usury, and, therefore, the security deed was void and the plaintiff was not entitled to the special lien prayed for. Upon a former trial the defendant abandoned all her alleged defenses except that of usury, admitted a prima facie case for the plaintiff, and assumed the burden of showing that the debt, which the deed was given to secure, was infected with usury. Upon that trial the jury found a general verdict in favor of the plaintiff for the principal and interest of its debt, but found in favor of the defendant upon the plea of usury and against the special lien claimed by the plaintiff. There was a motion for a new trial, which was overruled, and the case was brought to this court, where the judgment overruling the motion for a new trial was reversed, this court holding that "there was no evidence to authorize the finding against the special lien prayed for by the plaintiff." *Equitable Mortgage Co.* v. *Watson,* 116 *Ga.* 679. In rendering the judgment of reversal, this court gave direction that such judgment should not have the effect of setting aside the verdict in so far as it found in favor of the plaintiff for the principal and interest of its debt, and that the new trial should be had upon two issues only, viz., whether or not the plaintiff was entitled to the special lien prayed for ; and, if so, should the judgment include attorney's fees. Ib. 685. When the case again came on for trial in the lower court, counsel representing the parties agreed, in open court, to

submit to the jury only the issue as to whether or not the plaintiff was entitled to the special lien prayed for, and to leave to the court the determination of the question in reference to attorney's fees. The jury found against the special lien. The plaintiff moved for a new trial, which motion was overruled, and it excepted.

The defendant admitted a prima facie case in favor of the plaintiff,. and assumed the burden of showing that the deed under which the plaintiff claimed the special lien was void because of the existence of usury therein.   In our opinion, she failed to establish her plea of usury, and therefore the verdict finding against the special lien is without evidence to support it.   When the case was here before, this court held that " While to support a plea of usury, filed for the purpose of invalidating a deed given to secure a debt, the evidence need not establish the usury with the particularity required when it is sought to recover back or set off the usury, still the evidence must show with certainty that the transaction was tainted with usury." It also held:  " In a given case, where the lender might reserve a portion of the loan without infecting the transaction with usury, it is incumbent on one who alleges usury to show the exact amount reserved."   See first and second head-notes to the case.   So it was then clearly settled that this was a case in which the lender might have reserved a portion of the loan without infecting the transaction with usury, and that it was incumbent upon the defendant to "show *with certainty* that the transaction was tainted with usury." Mr. Justice Cobb, who then delivered the opinion of the court, stated the documentary evidence introduced by the plaintiff and the testimony of Alonzo Richardson, who testified in behalf of the plaintiff, and concluded that this evidence authorized a finding in favor of the plaintiff; and that if there was nothing to contradict this evidence, such a finding was demanded.   The evidence which supports the plaintiff's case in the present record is substantially the same as that with which Mr. Justice Cobb, speaking for the court, was then dealing.  The same documentary evidence was introduced upon this trial, and Richardson again testified substantially as he did before, except that upon this last trial he testified that of the $2,300 received from the Mortgage Company upon the note, the Atlanta Trust & Banking Company received $172.50 and L. L. Ray $115.00 as commissions for procuring the loan for the defendant.

In what respect, then, does the case as now made differ from the case as then made?    Then the defendant relied mainly upon the testimony of her husband, to show usury in the deed, which testimony this court held to be insufficient for such purpose. Now, her husband's testimony does not appear in the case, and she relies mainly upon her own depositions.    The most cursory examination of the brief of her testimony contained in the record shows that she did not, and could not, know the facts which she undertook to prove by her testimony.    It is true that when asked, upon direct examination, to "state whether or not any money was reserved by the Equitable Mortgage Company," she answered: "It was all kept back except $29 and what was paid in settlement of first loan.    It was all reserved except the amount used to pay off the first loan and $29 in cash delivered to me by my husband."    But if she, as contended by her counsel, meant by this to say that the *Equitable Mortgage Company* kept back all the sum represented by the principal of the note except the amount used to pay off the old loan and the $29 delivered to her by her husband, her answers to the cross-interrogatories, irrespective of other circumstances in the case, to which we shall presently allude, show clearly and conclusively that she did not, and could not, know this.    She answered the cross-interrogatories as follows: "The money was borrowed for the purpose of paying off an existing loan on the land, in order to get the benefit of a lower rate of interest, and to improve the farm.    I suppose the old loan was paid out of the money, as this was the purpose of the loan.    My husband received the money for the purpose stated.    He attended to all my business.    I was sick in bed at the time.    I did not handle the money; my husband attended to it for me at my direction.    I only handled $29, which my husband brought me.    I looked to the loan company to send me the remainder of the money over and above what it took to pay off the existing loan. The other loan was satisfied.    I don't know of any other amount but the $29 that was received by me or my husband on said loan; the other was kept back, and I looked to the lender for it.    I don't know what was done with it, other than I have stated.    I know it was kept back, because it was never sent to us.    They kept back the difference between what was due on the old loan and the new.    It was my understanding that I was to get, to the best of

my recollection, $475 in money after paying off the first loan, when I signed the notes. My husband looked after the borrowing and paying out of the money for me. I received $29 through my husband. I did not see any money paid my husband. He gave me only $29. I only know he paid off the old loan and gave me $29 in cash. I know this from what my husband told me, and from the fact we never received any further notice from first loan. It is true I was examined before by interrogations, and the question was asked me, ' How much money was turned over to you, if any at all?' and I answered it, 'I don't remember; I don't think I got a cent; if I got any at all it was a very small amount.' I think I added I received $29. My recollection is that I testified as I do now. I don't remember whether I stated in my former interrogatories how much money was kept back. I know how much was kept back, because I only received $29. I knew these facts when the other interrogatories were executed, as well as I do now. I have talked to no one about interrogatories. No explanation has been given me as to why it is necessary to take my interrogatories again." We do not think it needs any argument to demonstrate that the answers of the witness show that she did not, of her own knowledge, know the fact which she undertook to establish by her testimony. And this character of hearsay evidence, though admitted, has no probative value. *Claflin* v. *Ballance*, 91 *Ga.* 412; *Eastlick* v. *Southern R Co.*, 116 *Ga.* 48; *Suttles* v. *Sewell*, 117 *Ga.* 216.

But there is other and undisputed evidence in the case, which shows that she could not personally know what amount of money the Equitable Mortgage Company actually loaned her. From this evidence it appears that she did not deal directly with the Mortgage Company, but, in obtaining the money, she dealt through a chain of agents. The documentary evidence shows that she constituted the Atlanta Trust & Banking Company her agent to procure a loan for her of $2,300, for five years, at six per cent. interest, payable annually, to be secured by a mortgage on or a deed to her farm, to be made to such person or corporation as the Trust Company might procure to advance the money; that L. L. Ray was her agent in dealing with the Trust Company, and was duly authorized by her to receive the money procured by the Trust Company from the Mortgage Company. Here were two agents

of hers interposed between her and the Mortgage Company. Her third agent is shown by her testimony to have been her husband. So, it appears from the evidence that her husband represented her in her dealings with Ray, Ray represented her in her dealings with the Trust Company, and the Trust Company represented her in her dealings with the Mortgage Company. Dealing through this string of agents, and, so far as the evidence discloses, having direct communication with only one of them, her husband, how was she to know how much money was received from the Mortgage Company? She knew how much money was received by herself from her husband. But her testimony shows that she did not know, of her own knowledge, how much he received from Ray, nor how much Ray received from the Trust Company, nor how much the Trust Company received from the Mortgage Company. What she actually received from her husband was not the question; but the vital question was, what did her agent, the Trust Company, receive from the Mortgage Company? Even if she had shown how much money her husband received from Ray and also how much Ray received from the Trust Company, she would have failed to carry the burden which she assumed, unless she went further and showed how much the Trust Company received from the Mortgage Company. If the amount received from the Mortgage Company by the Trust Company, shown by the evidence and admitted to have been the duly authorized agent of the defendant, was not such as to render the loan usurious, then the security deed was not tainted with usury. The evidence offered by the plaintiff shows what this amount was, and that it was not such as to render the loan usurious; and so this court decided when the case was here before. The evidence for the defendant wholly fails to overcome this, for the reason that it fails to show what amount she received from the lender in exchange for the note and the mortgage given to secure it.

We might well end this opinion here, but the able and ingenious counsel for the defendant in error has earnestly insisted that there is a circumstance, deducible from the evidence in the case, which shows that the $29 in cash which the defendant testified she received from her husband was in fact all of the amount loaned to her by the Mortgage Company, except the sum used in settling the old loan upon the property. We will state the circumstances

upon which the counsel relies. The defendant introduced a certificate of deposit, issued by the Trust Company, reciting that the Mortgage Company had deposited with the Trust Company the sum of $2,012.50, payable only after a certificate on the back thereof should be signed by Mrs. Watson, to the order of L. L. Ray, agent of Mrs. Watson, and upon a return of the certificate of deposit properly indorsed. She also introduced the old note, with interest coupons attached thereto, which was taken up with proceeds of the new loan. Richardson, the plaintiff's witness, as we have said, testified that from the $2,300, which the Mortgage Company turned over to the Trust Company for Mrs. Watson, the Trust Company received $172.50 as commissions and Ray received $115.00 as commissions. The counsel contends that when the sum of $287.50, the aggregate amount of these commissions, is added to the amount of the principal and interest that was due upon the old loan at the time it was paid off, and the total is subtracted from the amount of the certificate of deposit, there is left exactly $29, the amount which Mrs. Watson testified she received from her husband in cash, and that this coincidence between her testimony as to the amount which her husband turned over to her and the amount which would have been left if the commissions were paid out of the $2,012.50 deposited to Mrs. Watson's credit with the Trust Company, shows that the Mortgage Company only loaned to her $2,012.50. When the note representing the old loan was taken up, one of the coupons attached thereto was past due, and as both the note and the coupon from its maturity bore interest at eight per cent. per annum, in making his calculation the counsel added together the principal of the note and the principal of the coupon and then calculated the interest upon the aggregate sum from Feb. 1, 1890, the date of the maturity of the coupon, to May 5, 1890, the date when the old note was paid off. But, in making the calculation, he computed the interest for a period of three months and five days, and, so computed, the mathematical result at which he arrived is correct. But, as we understand it, the period of time for which the interest should have been calculated is three months and four days; and if the calculation is made for this period, the difference between the amount of the certificate of deposit and the sum of the commissions and the amount due on the old loan will be $29.36, instead of the exact

amount which Mrs. Watson testified her husband paid her, viz., $29. As, during the course of her examination, Mrs. Watson testified eight different times that the amount of cash which she received was $29, never once intimating that that was not the precise amount which she received from her husband, and, in three of these instances, stated that it was " only" $29, the force of the argument drawn from the alleged coincidence to which the counsel calls our attention is considerably weakened, if the interest is calculated for the correct period.

But even admitting that the period for which the counsel calculated the interest was the correct one, we do not think much importance is to be attached to the result of his figures. At best it raises a mere suspicion that the defendant's contention may be true, but does not prove that it is true. Let us consider, for a moment, the process of reasoning which must be pursued in order to reach the conclusion that the evidence shows " with certainty that the transaction was tainted with usury." Mrs. Watson, without knowing the amount received from the Mortgage Company by her agent the Trust Company, without knowing the amount turned over by the Trust Company to her other agent Ray, and without even knowing what amount her husband received for her from Ray, testifies that her husband turned over to her only $29. Inasmuch as this happens to be the exact amount in cash which she ought to have received, if the Mortgage Company had only turned over to her agent, the Trust Company, the $2,012.50 represented by the certificate of deposit and from this the Trust Company and Ray had, respectively, deducted the commissions which Richardson testified they received, and the attorneys representing the holder of the old loan had received in settlement of the same neither more nor less than the exact amount due when the settlement was made, therefore, Mrs. Watson has successfully carried the burden which she assumed, by proving " with certainty " that the transaction between the Mortgage Company and herself " was tainted with usury." In our opinion, this reasoning is fallacious. The argument here indicated proceeds upon the theory that because certain proved facts will harmonize perfectly with certain assumed facts, therefore the assumed facts must have occurred. It assumes that the $287.50 of commissions received by the Trust Company and Ray were taken from the $2,012.50 represented by

the certificate of deposit, in the face of Richardson's uncontradicted testimony that they were taken from $2,300 loaned by the Mortgage Company to Mrs. Watson, leaving the exact amount of the certificate of deposit, and in face of the fact that the Trust Company issued a certificate of deposit in favor of Mrs. Watson for $2,012.50. It assumes that the amount paid in settlement of the old loan was neither more nor less than the sum due thereon when the settlement was effected. It assumes that the $29 received by Mrs. Watson from her husband was all the cash which he received from Ray, that Ray received only $2,012.50 from the Trust Company, and the Trust Company received only this sum from the Mortgage Company, and because these assumed facts will harmonize perfectly with the proved facts, viz., that the Trust Company and Ray received in commissions $287.50 ; that Mrs. Watson got only $29 from her husband; that the certificate of deposit was for $2,012.50, and the amount due on the old loan was a certain sum : therefore Mrs. Watson has shown with certainty that the transaction was tainted with usury. When the case was here before, Mr. Justice Cobb said : " It is said, though, that under the documentary evidence it appears that the Trust Company received from the plaintiff only $2,012.50. It is true that the documentary evidence shows that this amount was received by the Trust Company, but that evidence does not show that this was all that was received, and Richardson swears positively that $2,300 was received. If $2,300 was received by the Trust Company, the transaction is not usurious. It therefore becomes necessary to determine whether there is any evidence on this point, contradicting Richardson, which would authorize a finding for the defendant." He concluded that there was nothing in the evidence offered by the defendant which contradicted Richardson's testimony. Then the strongest evidence for the defendant was that of her husband, who testified that he thought the lender reserved about $475 at the time the loan was negotiated. Now the case in favor of the plaintiff is practically the same as it was then, and the only material change in the case for the defendant is the substitution of her testimony for that of her husband, and her testimony shows that, of her own knowledge, she knew nothing about the amount reserved by the lender. So, as much as we dislike to set aside verdicts upon mere questions of fact, we are constrained to again

do so in this case. While it is very desirable that there should be an end of litigation, a court should never hesitate to set aside a verdict which is unsupported by evidence, merely because such verdict is but a repetition of previous verdicts in the same case which have been set aside for a like reason.

*Judgment reversed. All the Justices concur.*