### 9414. McDANIEL *v.* BANK OF BETHLEHEM.

The action was brought by the transferee of a note which contained the recital that it was one of a series given for the purchase-price of lands described in a bond for titles of even date therewith, executed by the payees to the maker, and that if any one of the notes should not be paid at maturity, then all of the series should become due and payable, it being expressly agreed that time was of the essence of the contract, and that if the particular note sued upon was not paid at maturity (November 1, 1916), it should become rent for the said lands for the year 1916. The plea of the defendant alleged that the transferee acquired the note with knowledge that the lands therein referred to had been previously sold to a third person, and it was therefore impossible for the payees to convey any title to said lands to the defendant. The defendant did not allege in his plea or amended plea that the amount of the note was not a fair and reasonable rental for the lands for the year named in the note, or was in excess of such legal damages for the breach of the contract for the sale of the land as could be actually computed, and that its denomination as rent was merely a device to obtain a legal penalty. *Held,* that the trial judge did not err in holding that so far as the rent consideration named in the note was concerned, and regardless of the precise notice the transferee had of the nature of the contract, no sufficient defense was interposed; and, the value of the cotton agreed to be paid being admitted, the judge did not err in directing a verdict in behalf of the plaintiff for the full amount of his demand.

DECIDED APRIL 12, 1918.

Complaint; from Barrow superior court—Judge Cobb. December 17, 1917.

The Bank of Bethlehem brought suit against McDaniel as principal, and E. S. Harris and E. V. Harris as indorsers, on a note for 5,000 pounds of middling lint cotton of the alleged value of 19 cents per pound, dated January 27, 1913, and due November 1, 1916, payable by its terms to E. S. Harris and E. V. Harris, and by them indorsed to the plaintiff. The copy of the note attached to the petition contains the following recital: "This note is one of a series of notes for the purchase-money of lands described in

bond for title executed this day by the payees, and it is hereby agreed that if any one of said notes should not be paid at maturity, or the interest on said notes, then all other notes of said series shall become due and payable, it being expressly agreed that time is the essence of this contract; and should this note not be paid at maturity, I agree that same shall become rent for said lands for the year 1916." The indorsers entered no appearance, but Mc-Daniel, the maker of the note, filed a plea, in which he made no distinct denial of the allegation as to the existence of the indebtedness claimed and the proper transfer of the note therein described, but merely set up that the paragraph containing these allegations was "neither admitted or denied, for want of sufficient information of the transaction alleged." It was further alleged, in the original plea, that the note sued upon was one of a series given by the defendant McDaniel to E. S. and E. V. Harris in payment for certain land, as would appear from an examination of a bond for titles made to said defendant by said E. S. and E. V. Harris, a copy of which was attached to the plea. The defendant alleged also that he had paid to the Messrs. Harris, in compliance with the terms of the bond, 15 bales of cotton,—7 in the fall of 1913, and 8 in the fall of 1915,—and that the money value of the bales remaining unpaid, under the provisions of the contract, was about $2,240, the full value of the tract of land. He likewise alleged in this connection that at the time the bond for titles was made to him, E. S. and E. V. Harris had already made a deed to the Farmers Bank of Monroe, to secure an indebtedness of $2,234.82, due by them to that bank, by a deed dated April 15, 1912, and recorded on the same day—all, of which facts he did not discover until about the middle of October, 1916, about the time he received notice from the plaintiff that it held the note sued upon. Certain equitable prayers of the defendant need not be considered for the purposes of this case. The bond for titles referred to described the land and fixed the total price to be paid therefor at 23,000 pounds of middling lint cotton, or 46 bales of 500 pounds each, to be paid as follows: 10 bales on November 1, 1913; 10 bales on November 1, 1914; 10 on November 1, 1915; 10 on November 1, 1916, and 6 on November 1, 1917. The bond for titles contained the following provision: "Time being the essence of this contract, it is agreed that if any of the notes listed below are not paid promptly

at maturity, that the holder thereof may at his option declare all of said notes due and proceed to collect the same, and treat the note during the year in which such default may be made as rent for that year." By leave of the court and subject to objection by counsel for the plaintiff, the defendant amended his original plea on September 26, 1917, and specifically denied the allegations of indebtedness in the second paragraph of the plaintiff's petition, referred to above. In the second paragraph of this amendment the defendant alleged that the Bank of Bethlehem was not the transferee of the note sued on, for value, before due and without notice, "but that said paper was indorsed over to them [it] as security only to an indebtedness of the indorsers to plaintiffs, and defendant alleges that plaintiff bank had and now has ample other security for the said indebtedness of said transferers and indorsers, without enforcing this note and security." The third paragraph of the amendment set up distinctly that "at the time" the plaintiff acquired the note sued upon, the plaintiff "well knew that the tract of land for which said note was given as part purchase had already been deeded to the Farmers Bank of Monroe as security for other indebtedness of the transferees, and that they were not in position to make deeds to this defendant if said purchase-money note was paid, that the said deed was on record and gave notice, and they further had actual notice." The fourth paragraph of the amendment to the plea alleged: that the Farmers Bank, which had acquired title to the tract of land, in part payment for which the note sued upon was given by the defendant, prior to the time that the plaintiff in this case obtained the note sued upon, as alleged in the preceding paragraph aforesaid, had deeded the land in question to the Monroe Oil and Fertilizer Company, which company also held a debt against E. S. and E. V. Harris for a large amount, and that the Monroe Oil and Fertilizer Company sued their said claim to judgment, and "had the land levied [upon] and sold to pay their debt, that said Harrises allowed the same sold and did not protect their title to said property. All of this is and was well known to plaintiffs. In so far as same had transpired at the time they took the said paper, they are bound by such notice, and in equity and right should not have and recover judgment in this matter, but are in the same position as said Harrises would be. Wherefore this defendant alleges that the consideration of said

note sued upon has totally failed, and prays that he be hence discharged without costs."

The court on oral motion struck the plea of the defendant as amended, and, it being admitted that 19 cents per pound was the market value of the cotton at the date of the maturity of the note, as alleged in the petition, thereupon directed a verdict in favor of the plaintiff, for the full amount claimed. Exceptions pendente lite to the striking of the plea and of the amendment to the plea were filed, and error is assigned thereon in the main bill of exceptions. A motion for a new trial was made on September 28, 1917, during the term of court and within 30 days of the rendition of the verdict and judgment. This motion was set for hearing in vacation, on November 3, 1917, but was by proper order continued to November 17, 1917, at which time the defendant offered an amendment to his motion for a new trial, which was duly allowed and filed on November 28, 1917. Likewise, on November 17, 1917, while the motion for a new trial was pending, the defendant offered another amendment to his plea, more precisely amplifying some of the allegations of fact previously made by him, and likewise alleging, for the first time, that the denomination of the consideration of the note sued upon as rent was a mere subterfuge to exact from the defendant a penalty for a failure to carry out his contract of purchase, and that, "should plaintiff be entitled to recover on the theory that they would be entitled to rent from defendant, this defendant says that the rent of said tract of land is capable of exact computation, and that 1,500 pounds of lint cotton was a reasonable rent for said tract of land for the year 1916, and that 5,000 pounds or 10 bales was excessive and was placed in said note as penalty and not as liquidated damages for breach of contract." This amendment was rejected, and the order of the trial judge recites: "This amendment was offered in vacation on this day, when the motion for new trial came on to be heard, and the amendment is disallowed, for the reason that the right to amend terminated when the verdict was rendered."

The motion for a new trial was overruled, and error is assigned thereon in the bill of exceptions. The motion contained, besides the general grounds, the two following grounds, which were added by amendment:

"That the court erred in disallowing amendment to plea filed

by this defendant at the September term, 1917, and in directing a verdict in favor of plaintiff against this defendant. In disallowing said amended plea and directing a verdict as above set forth, the court held that said amended plea set up no defense, for the reason that, should the title not have been in E. S. and E. V. Harris at the time of the transferring the note sued upon to the Bank of Bethlehem, and while all of this might have been known to the Bank of Bethlehem at the time of said transfer, that inasmuch as said McDaniel was in possession of the land, and the notes stipulated that same should be paid as rent in event all payments were not made, that plaintiff was entitled to have judgment for the amount of said note as rent. Movant alleges that this was error, and that the question of the value of the rent should have been submitted to a jury, and that plaintiff was only entitled to recover the actual value of the rent of said land, and that the damage for the breach of contract to pay for land is accurately computable, and a stipulation by which an amount in excess of such legal damages shall be paid or retained is not enforceable."

"That the court erred in directing a verdict in favor of plaintiff against defendants for the amount of the notes sued upon, for the reason that the pleadings showed that the plaintiff was not a bona fide purchaser of the note, sued upon, before maturity and for value, without notice of any defect or equity, but said plaintiff had notice before the purchase of said note that same was for the purchase-money of a tract of land, and that prior to their purchase of said note from E. S. and E. V. Harris they had parted with their title to said tract of land, and could not carry out the contract of sale of said land, for the purchase-price of which said note was given. In view of these facts it was error to direct a verdict for the full amount of said note, for if plaintiff was entitled to recover at all on said note, it should have only been allowed to recover the actual amount of rent said tract was shown to be worth; and while said note stipulated in its face that same was to be treated as rent in event all payments were not promptly made, said stipulation was in fact only a means of undertaking to exact a forfeiture or penalty for a failure of defendant to make his payments on said land, and, being a forfeiture or penalty, is not enforceable by law."

*W. H. Quarterman, Lewis C. Russell,* for plaintiff in error.

*R. L. Cox,* contra.

WADE, C. J. (After stating the foregoing facts.) Counsel for the plaintiff in error in his brief filed in this court "expressly abandons any and all allegations of error upon the disallowance of the amendment offered to the original answer on the 17th of November, 1917, the date on which the motion for new trial was heard."

It is insisted by the plaintiff in error that the original plea, with the amendment allowed, distinctly charged that the plaintiff was not a bona fide transferee for value and without notice, but that even in the event this court should hold otherwise, the verdict directed was not authorized, and should be set aside under the general grounds of the motion for a new trial, inasmuch as the court had before it (besides the agreement as to the value of cotton) only the original petition, including a copy of the note, which showed that the contract sued upon was primarily for the purchase of land, with an added provision or condition that in the event of failure to pay in accordance with the original contract, the amount therein stipulated should become due as rent for the year 1916; and even if the statement of the presiding judge be taken into consideration (that although this amount could not be recovered as purchase-money, it could be recovered under the rent stipulation), no legal evidence was introduced to show the value of the land for rent; and any amount fixed as such value by agreement and in advance of breach of the contract of purchase must be construed as a penalty and not enforceable; and the stipulated damages for the breach of the contract for the sale of the land, being in the nature of a penalty, were not enforceable, and the verdict was therefore contrary to law.

1. It is clear that the second paragraph of the amendment to the answer does not unqualifiedly allege that the Bank of Bethlehem was not the transferee of the note, for value, before due and without notice; and hence there was nothing in that paragraph to put the plaintiff on proof that the plaintiff was in fact a bona fide holder of the note without notice. The paragraph must be considered as a whole, and the allegation that the bank was not a bona fide holder of the note without notice, coupled with the further allegation, "but" that said paper was indorsed to the

bank as security for an indebtedness due it by the indorsers, and the bank had ample other security for said debt without enforcing the note sued upon, amounts merely to an allegation.that the bank was not a bona fide transferee without notice, *for the reason that,* or *because,* the paper was held by it as collateral security only, etc. It is unnecessary to consider at length the allegation of this paragraph that the bank held this note as collateral and had other security sufficient to make safe the debt secured thereby. One.holding a negotiable instrument transferred as collateral security for a debt is as fully protected as if the holder had purchased the note outright. "The holder of a note as collateral security for a debt stands upon the same footing as the purchaser." Civil Code of 1910, § 4289. It is true that the holder of a paper obtained as collateral·security may recover only the amount of the debt secured, where the maker has a valid defense against the original payee, and in such case the transferee is entitled to stand upon a better footing than the original payee only pro tanto; but in the absence of proof to the contrary it will be presumed that the debt due the transferee and secured by the collateral paper he holds is·equal to or exceeds the amount of the security. See *Hancock* v. *Empire Cotton Oil Co.,* 17 *Ga. App.* 170, 194, 195 (86 S. E. 434), and cases there cited. See also *Morrison* v. *Citizens and Southern Bank,* 19 *Ga. App.* 434 (4) (91 S. E. 509) ; *Linderman* v. *Atkins,* 143 *Ga.* 366 (3) (85 S. E. 101). In a suit by the holder of such a note "the presumption is that the secured debt is sufficient to consume the collateral, and the onus of pleading and proving a less amount and the maker's equity against the original payee is on the defendant." *Clydesdale Bank* v. *Blackshear Mfg. Co.,* 18 *Ga. App.* 515 (2) (89 S. E. 1051), and citations. No intimation is made in the second paragraph of the amendment to the plea, allowed subject to objection, or elsewhere in the original plea or the amended plea, that the debt due the plaintiff by E. S. and E. V. Harris, and secured by the note sued upon, as well as by other collateral, was less in amount than the collateral note sought to be collected, and the fact that other collateral, which in the opinion of the defendant was sufficient to protect the debt in part secured by this note, was held by the plaintiff, could not of course affect the right of the plaintiff to enforce the collection of this particular collateral security.

2. The third paragraph of the amendment to the answer suffi-
ciently alleged that the plaintiff acquired the note sued upon with
notice that it had been given as a part of the purchase-price of a
tract of land previously deeded by the payees to an outside person,
and that therefore the payees could not make and execute a good
deed of conveyance to the defendant, even if this and the remain-
ing purchase-money notes should be paid. The further statements
in paragraph 4 of the said amendment, to the effect that the party
holding the outstanding title to the land had levied upon and sold
the same, and that of this the plaintiff had knowledge, "in so far
as same had transpired" at the time it acquired the note, were not
essential to complete the averments in the paragraph 3 of the plea,
and did not modify the distinct statement therein that "at the time
said plaintiff acquired said note sued upon, said plaintiff well
knew" that the tract of land had already been deeded to the Farm-
ers Bank of Monroe as security, etc. It must be inferred, from
reading the amendment to the plea as a whole, and in the ab-
sence of any special demurrer, that a general allegation of notice
on the part of the Bank of Bethlehem at the time it acquired the
note, to the effect that the land for which it was given in part
payment had already been deeded to an outside person, and there-
fore the consideration had to that extent failed, was sufficiently set
out. It is apparent, therefore, that if the sole consideration named
in the note had been the land described in the bond for titles at-
tached to the plea and which is referred to in the note, it would
have been error to strike the plea as amended. The note, how-
ever, recited another and different consideration, since it provided
distinctly that in the event any one of the series should not be
paid at maturity, then all the other notes of the series should be-
come due and payable, time being of the essence of the contract;
"and should this note not be paid at maturity, I agree that same
shall become rent for the lands for the year 1916." The learned
trial judge (as appears from the fourth ground of the motion
for a new trial, which is set forth in the statement of facts), in
striking the amended plea and directing a verdict against the de-
fendant, held that the plea as amended set up no defense, for the
reason that, even if the title to the land was not in E. S. and E. V.
Harris at the time the note sued upon was transferred to the
Bank of Bethlehem, and all this was known by the Bank of Beth-

lehem at the time of the transfer, "inasmuch as said McDaniel was in possession of the land and the note stipulated that same should be paid as rent in the event all payments were not paid, . . plaintiff was entitled to have judgment for the amount of said note as rent." It is insisted in this ground of the motion that the question as to the value of the rent should have been submitted to the jury, and that the plaintiff was only entitled to recover the actual value of the rent of the land, and the damages for the breach of the contract to pay for the land were accurately computable, and the stipulation by which an amount in excess of such legal damages should be paid or retained was not enforceable. The defendant, however, interposed no plea alleging that 5,000 pounds of middling lint cotton was such an exorbitant yearly rental for the lands described in the bond for titles and referred to in the note as would amount to a penalty for the breach of the contract of purchase.

This court can not determine, as a matter of law, nor could the trial court reach the conclusion, from anything appearing in the record, that the amount stipulated in the note to be paid as rent for the year 1916, in the event that any of the series of notes given for the purchase-price of the land was not paid at maturity, was greater than the actual value of the rent of that land for the year 1916, or was so far in excess of actual legal damages, capable of accurate computation, for the breach of the contract to pay for the land, as to amount to a penalty for such breach. There is nothing in *Lytle* v. *Scottish American Mortgage Co.*, 122 Ga. 458 (50 S. E. 402), and the various cases therein referred to, in conflict with this holding. As was said in that case (p. 466): "Equity will not force parties to litigate, nor will it prevent them from entering into agreements to avoid litigation. Civil Code [of 1895], § 3935 [Civil Code of 1910, § 4532]. There is no reason, therefore, why they may not agree in advance upon damages to be paid in the event of a breach, or upon an amount to be paid for rent on rescission of a contract of sale. . . Whether such an agreement can be enforced will depend, however, among other things, on the question as to whether the rent was liquidated damages, or so unreasonable as to come within the prohibition against penalties and forfeitures." It would *seem* that a rental of 10 bales of cotton for one year, when the total agreed purchase-price amounted only to

46 bales, payable in the course of 5 years, would be unreasonable and excessive, but, for aught that appears in the record, this may *not* be the case, and, to the contrary, the value of the property in question may have increased so greatly, since the making of the contract, or may have actually been so much greater at the time the contract was made than the purchase-price therein agreed upon, that 10 bales would in fact be only a moderate and reasonable rent for 1916, especially as the price of cotton may have greatly changed during the period, and it appears from the recitals in the fourth ground of the motion for a new trial that the defendant was actually in possession of the property during that period. According to the plea as amended, the bank clearly had notice that the land had been sold to another person before it acquired this one of the purchase-money notes given therefor by the defendant, but, so far as is disclosed by any statement in the plea, the bank then also knew that the defendant was in possession of the land in question, and that in the event he defaulted in the payment of this note, he would be liable, under its terms, for its full amount, *as rent* for the year 1916; and believing that this was a fair and reasonable rent for the property, he nevertheless accepted the same.

The plaintiff in error himself evidently recognized the necessity for showing that the consideration of the note (regarded as a rental contract) had failed in part at least, inasmuch as the amount thereof was in excess of a reasonable rental of the property, if he expected to defeat its recovery in the hands of the bank, notwithstanding the bank had received the note with notice of the previous transfer of the property to an outside person, by attempting, during the pendency of the motion for a new trial, to file an amendment to his plea, in which amendment he alleged distinctly that a reasonable rental for the premises for one year would amount to only 1,500 pounds of cotton, instead of 5,000 pounds. The trial judge was, of course, confined to what was in fact pleaded before the rendition of the judgment and at the time he struck the pleas as setting up no sufficient defense to the suit. Whether or not the rent stipulated for in the note was in fact excessive or was reasonable, and whether or not the defendant by a timely plea could have set up a valid defense against the demand of the plaintiff, could not be considered by the trial judge, nor can it be considered by this court. We of course recognize the principles re-

ferred to by learned counsel for the plaintiff in error, which are so clearly elucidated in *Lytle* v. *Scottish American Co.,* supra, and realize that while a valid written contract may not ordinarily be contradicted or varied by parol, it is competent to show by such evidence that the writing is in fact "but a cover for usury, penalty, or forfeiture;" and that what was denominated rent in the note sued upon may in fact have been a part of the purchase-money or a device to obtain a penalty, and that the damages for the breach of contracts for the sale of land are capable of exact computation, "and a stipulation by which an amount in excess of such legal damages shall be paid or retained is not enforceable." Nevertheless, in the absence of any plea even suggesting that what is denominated "rent" in the note sued upon was an unreasonable amount as rent for the premises in question, or was so denominated merely as a device to obtain an unlawful penalty in excess of proper and legal damages for the breach of the contract, the trial court could not properly inject such an issue into the case; nor can this court read into the record an issue of that character merely on surmise or supposition, and without any sufficient basis therefor in the record before us.

We must, therefore, hold that the trial judge did not err in striking, on oral objection, the plea as amended, and in thereafter directing a verdict, since the plea set up no defense whatever to the collection of the amount claimed by the plaintiff, which, notwithstanding the previous sale of the land by the original payees of the note, was, so far as the record discloses, a fair and reasonable price for its rental during the year 1916, and was so recoverable.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*