24973. BAILEY, executrix, *v.* NEWBERRY.

DECIDED OCTOBER 22, 1935. REHEARING DENIED FEBRUARY 27, 1936.

*Lowrey Stone,* for plaintiff.

*J. M. Cowart, A. H. Gray,* for defendant.

GUERRY, J. On January 31, 1918, Mrs. Annie Newberry, executed a note for $1100, payable to J. A. Hightower. The note was due January 1, 1919. It recited a charge of 8 per cent. interest per annum after maturity. Up to February 26, 1931, there had

been paid on the note $1176.61. J. A. Hightower died, and Mrs. Hilda H. Bailey as executrix of his estate brought suit for the balance due on the note. The defendant filed a plea of usury, setting up that only $1000 was received by her, and that the $100 was reserved as interest for the use of the money for a year. On the trial the evidence for the defendant was substantially as follows: Jim Newberry, husband of the defendant, testified that he got one Olive to see Hightower about his wife borrowing the money for which the note sued on was given; that thereafter he took his wife down to Hightower's store at Damascus, to sign the mortgage note and get the money; that his wife got only $1000 in money, and "the $100 was in there for interest for the period of time stipulated in the note;" that he heard all the conversation between his wife and Hightower, "and besides what I have testified about I don't know all that was said. All that I remember is that she wanted to borrow $1000, and he told her he would lend it to her. There could have been something that I don't remember. I can't tell everything that was said between them that day." He further testified that he was not acting as his wife's agent when the note was made, and had not been looking after her place and acting as her agent for the past twenty years; that he had nothing to do with borrowing the money; that since 1918 he had looked after his wife's place described in the mortgage note, but "not the financial end of it;" that on the occasion when the note was signed he took his wife to Hightower's store where the note was signed, then to the bank where Hightower paid over the money; that he counted the money at that time, and that under his wife's instructions he carried the money that had since been paid on the note to Hightower, all of such payments having been made generally and without direction to Hightower as to their application. He denied that on a former trial of the case he had testified that his wife had got $1000 and that he did not know what the other $100 was for.

E. H. Dunn testified for the plaintiff, that he was present on a former trial of the case, whereat Jim Newberry testified that his wife got only $1000, and that he (Newberry) did not know what the $100 in the face of the note was for—he supposed it was for interest. Plaintiff introduced an excerpt from a brief of the evidence prepared by the plaintiff's attorney from his recollection in a former trial of the case which brief had been approved and cer-

tified as true and correct by the judge, to wit: "J. A. Hightower got $1000 and turned over to my wife. I counted the money. I don't know what the other $100 of the face of the note was for." The jury returned a verdict in favor of the defendant and plaintiff excepted to the refusal of a new trial.

Usury is defined as "the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." Code of 1933, § 57-102. It makes no difference that a written promise to pay money is apparently lawful on its face and does not contain any unlawful exaction of money as interest; for the law abhors usury, and will search every fact and circumstance and allow the introduction of parol evidence to test the validity of the real transaction of the parties. *McDaniel* v. *Bank,* 22 *Ga. App.* 223 (95 S. E. 724). "There are four requisites of every usurious transaction. (1) A loan or forbearance of money, either express or implied. (2) Upon an understanding that the principal shall or may be returned. (3) And that for such loan or forbearance a greater profit than is authorized by law shall be paid or is agreed to be paid. (4) That the contract was made with an intent to violate the law." *Bank of Lumpkin* v. *Farmers State Bank,* 161 *Ga.* 801, 810 (132 S. E. 221). In determining the case at bar it is necessary to apply the evidence to the third essential point stated above; that is to say, it is necessary to decide whether the evidence disclosed that for the loan a greater profit than is authorized by law was paid or agreed to be paid. The burden was on the defendant to establish her plea of usury. *Finney* v. *Equitable Mortgage Co.,* 111 *Ga.* 108 (36 S. E. 461); *Harvard* v. *Davis,* 145 *Ga.* 580 (89 S. E. 740); *Fulwood* v. *Leitch,* 7 *Ga. App.* 359 (66 S. E. 987). It was said, in *Equitable Mortgage Co.* v. *Watson,* 116 *Ga.* 679 (43 S. E. 49), that the "evidence must show with certainty that the transaction was tainted with usury." See also *Equitable Mortgage Co.* v. *Watson,* 119 *Ga.* 280 (46 S. E. 440).

The defendant's plea and the testimony of her husband both bring out the fact that although she executed the note for $1100, she received only $1000. The note was for a little less than a year, and of course it was infected with usury, if the $100 was reserved as interest. However, as was said in *Wilkins* v. *Gibson,* 113 *Ga.* 31, 53 (38 S. E. 374, 84 Am. St. R. 204), "the mere fact

that the amount received by the debtor is less than the apparent principal of the debt, and that treating the amount thus received as the true principal would render the transaction usurious, will not alone constitute proof of usury." In his opinion on page 53 Judge Cobb said, in support of this principle: "There was testimony that the amount loaned Mrs. Steiner was $6000; whereas the amount of the debt secured by the deed was $9068. But this excess can be accounted for on the score of interest and lawful charges, such as commissions, etc. But be this as it may, it is incumbent on the defendant to show that the excess represented actually more than lawful charges, or that some trick or device was resorted to to evade the usury laws." In the case at bar, does not the defendant carry that burden by the plain and positive testimony of Jim Newberry that "the $100 was in there *for interest* for the period of time stipulated in the note"? The plaintiff brands this testimony as hearsay and purely a conclusion of the witness, and insists that as such, under many decisions of this court and of the Supreme Court (see *Equitable Mtg. Co.* v. *Watson,* supra; *Priester* v. *Melton,* 135 *Ga.* 694, 70 S. E. 646; *Herrington* v. *Shumate Razor Co.,* 6 *Ga. App.* 861, 65 S. E. 1064; *Lane* v. *Happ Bros. Co.,* 44 *Ga. App.* 577, 162 S. E. 519), even though admitted without objection, it can have no probative value. However, we do not think this testimony, standing alone, can be so designated. As was said in *Sankey* v. *Columbus Iron Works,* 44 *Ga.* 228, "It is sometimes difficult to say what is a fact and what is a conclusion. Half of what every man tells as facts is nothing but very certain conclusions. . . We think partnership or no partnership, ordinarily, may be stated as a fact. Son or no son, father or no father, stand on pretty much the same footing. Ordinarily such things are stated as facts. A witness who states them is open to cross-examination, in which the ground of the statement can be inquired into. We think it would be restricting the range of statement too much to say that a witness can not be permitted to state, as a fact, that one man was a partner in a firm." However, conceding that the statement was an opinion of the witness, as if the witness had stated "it was my understanding," or "it is my opinion that the $100 was for interest," it not further appearing that this opinion was drawn from facts not testified to which in law or fact would not support the conclusion, it can not be held, where

the testimony was not objected to, that it had no probative value. In *Bull* v. *Carpenter*, 32 *Ga. App.* 637 (124 S. E. 381), it was said: "While hearsay evidence will not support a verdict, or afford corroboration of a witness who has testified wilfully and knowingly falsely, under section 5884 of the Civil Code (1910), the language of the witness that it was his 'understanding' as to certain facts, otherwise positively stated, can not be rejected as hearsay, but, without further explanation, will be taken as resting upon actual facts within the personal knowledge of the witness. Such a statement could have been tested on cross-examination, and, in the absence of any modification or explanation on further examination, or any exception after timely objection to such evidence, can not be disregarded. 'A verdict which is entirely without any evidence to support it is contrary to law, but a verdict based upon secondary evidence introduced without any objection may be valid, and the same is true where the verdict rests upon sufficient testimony possessing probative value, even though such testimony would not have been competent if a timely and appropriate objection had been made at the trial.' *Ga. Coast &c. R. Co.* v. *Herrington*, 14 *Ga. App.* 539 (2) (81 S. E. 814). 'An opinionative statement of a witness, even though it be a conclusion unsupported by such facts as are necessary' to show its correctness, 'where no objection is urged thereto upon the trial, can not be challenged for the first time upon review, as incompetent and insufficient.' *Hutchinson* v. *State*, 8 *Ga. App.* 684 (1), 685 (70 S. E. 63)." The witness did not say that he rested his statement as to the $100 being interest upon the fact that his wife only received $1000 from the note. The point is that it does not appear from what he obtained his information, or upon what he based his positive statement. We think that it was for the jury to determine the value of this evidence, and that this court can not say, as a matter of law, that the verdict is contrary to the evidence and the law.

A further complaint by the plaintiff is that the judge erred in failing to submit to the jury the question whether or not Jim Newberry was acting as agent for his wife in the transaction with the plaintiff's testate, and therefore whether he was a competent witness. While some facts in evidence might tend to show that he was acting as such (see *Sikes* v. *Sikes*, 162 *Ga.* 302, 133 S. E. 239), yet where there was no request by the plaintiff so to charge,

698

and the question was not raised in any way in the trial court, we do not think the judge erred in this respect. The motion for new trial was properly overruled.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*