54 So.2d 813 (1951)
HOME FINANCE CO., Inc.
v.
PADGETT et al.
No. 7706.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1951.
Rehearing Denied November 30, 1951.
*814 Morgan, Baker & Skeels, Shreveport, for appellant.
Wilson, Abramson & Maroun, Shreveport, for appellees.
HARDY, Judge.
Plaintiff seeks recovery of the sum of $665.10 alleged to be the balance due on a note executed by Herman W. Padgett and wife, Faye Padgett, upon which the defendant, Guy S. Padgett, was an accommodation maker. Plaintiff also seeks recognition and enforcement of a chattel mortgage executed by Mr. and Mrs. Padgett on household furniture as security for the note. The demand is resisted by defendants on the ground that the transaction was a complete nullity by reason of violation of what is known as the Louisiana Small Loan LawAct 94 of 1942, Dart's Statutes, Section 781.1-20, Revised Statutes 1950, Chapter 7, Section 571, et seq., LSA-RS 6:571 et seq. After trial there was judgment rejecting plaintiff's demands, from which plaintiff has appealed.
The facts are so clearly stated and the conclusions so properly reached, in our opinion, on the basis of the excellently enunciated opinion of our learned brother of the District Court that we quote his opinion and adopt same as our own, as follows:
"Plaintiff corporation is engaged in the small loan business as a licensee under the Louisiana Small Loan Law and has engaged in that business in the city of Shreveport for a number of years. According to the testimony of Mr. D. P. Matas, the local branch manager of the plaintiff, Herman W. Padgett, defendant, had been a customer of the plaintiff since about 1946, borrowing at different times various amounts of money. On July 25, 1949, Herman W. Padgett was indebted unto plaintiff on a note covering previous borrowings, said note being dated April 1, 1949 in the amount of $447.30. On that day, July 25, 1949, Padgett made payment on said note which brought it up to date and left a balance thereon of $357.84. The next day, July 26, 1949, Padgett desired to borrow additional money for purposes which the record does not disclose, but concerning which Padgett testified that he `found that he had to have more money.' Whereupon he approached Mr. Matas of the plaintiff corporation. Padgett testifies that he requested of Matas the loan of $150.00 or $200.00, but Matas testifies that Padgett desired some $274.00. It is admitted in the pleadings that Padgett received $274.54. Matas agreed to, and did, lend Padgett the amount of $274.54, but required of Padgett that he execute a new note for $798.12, the note sued on herein, which Matas explains as follows: The old note on which there was a balance of $357.84 was to be taken up and liquidated, Padgett being allowed a rebate thereon of $44.88, leaving a balance after the rebate of $312.96. Padgett was charged $12.00 for life insurance, 50 cents for recording the chattel mortgage, and $198.12 discount. These charges, plus the $274.54 received by Padgett, make up the face value of the note of $798.12.
"Thus it will be seen that in order to obtain the loan of the additional sum of $274.54, Padgett was required to obligate himself for an additional amount of $440.28. Defendant Padgett claims that, since he received an additional loan of less than $300.00, the loan is covered by the provisions of the Louisiana Small Loan Law.
"Plaintiff claims that what happened was that Padgett made his own note for $798.12 and that plaintiff purchased the same from him at a discount of $198.12, paying Padgett therefor the sum of $600.00, by taking up the old note and deducting the charges for insurance and recording fees and actually delivering to Padgett the sum of $274.54 in cash. Thus plaintiff contends that the loan evidenced by the note sued on in this case was for an amount in excess of $300.00 and, therefore, not governed by the Louisiana Small Loan Law. In this connection plaintiff contends that, while it is a licensee under the Small Loan Law, it at the same time engages in a general finance business and lends amounts in excess *815 of $300.00, and that it was in this capacity that the transaction involved in this suit was consummated.
"The real question in this suit as we see it is whether the transaction as hereinabove outlined represents the loan of a sum less than $300.00 under the Small Loan Law, or whether it is a transaction over which the Small Loan Law has no application.
"We think the transaction represents a loan of less than $300.00 and is subject to the provisions of the Small Loan Law. Padgett received from the plaintiff on July 26, 1949 only the sum of $274.54. His previous loan had been made current the preceding day and was not at that time due and exigible. And we think the device resorted to by the plaintiff in this case constitutes a clear evasion of the provisions of the Small Loan Law and a device by which plaintiff sought to do indirectly what the Act clearly prohibits being done directly.
"In the case of Fidelity Finance Company v. Liles, [La.App.] 2 So.2d 717, the Supreme Court of this State said that the Louisiana Small Loan Law is to be construed strictly against the licensees thereunder. See, also, South Shreveport Finance & Loan Company v. Stephenson, [184 La. 916] 168 So. 100. In 55 Am. Jurisprudence, § 14, `Usury,' we find the following: `The cupidity of lenders and the willingness of borrowers to concede whatever may be demanded or to promise whatever may be exacted in order to obtain temporary relief from financial embarrassment have resulted in a great variety of devices to evade the usury laws. To frustrate such evasions the courts look beyond the form of transactions to their substance.' And while the form of the transaction involved in this case is a $798.12 note, which on its face would indicate that the Small Loan Law has no application, we cannot escape the conclusion that the real transaction of July 26, 1949 between plaintiff and defendant Padgett was the loan of a sum of money less than $300.00.
"Plaintiff says that it purchased Padgett's $798.12 note for $600.00, and that it is entitled to recover the face value of the note under the provisions of Article 2924 of the Civil Code, which provides as follows:
"`The owner or discounter of any note or bond or other written evidence of debt for the payment of money, payable to order of bearer, or by assignment, shall have the right to claim and recover the full amount of such note, bond or other written evidence of debt, and all interest not beyond eight per cent. per annum interest that may accrue thereon, notwithstanding that the rate of interest or discount at which the same may be or may have been discounted has been beyond the rate of eight per cent per annum interest or discount; but this provision shall not apply to the banking institutions of this State in operation under existing laws.
"`The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer or transferable by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note, bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than eight per cent per annum; provided, such obligation shall not bear more than eight per cent per annum after maturity until paid.'
"Plaintiff contends that the note involved in this case conforms to the provisions of the quoted Civil Code article. But, while it conforms thereto in its form, the substance of the transaction of July 26, 1949 was nothing but a loan of $274.54, for which defendant Padgett had to obligate himself, as we have heretofore shown, for an additional sum of $440.28. We think that this transaction was illegal under the Small Loan Law and in direct violation of Section 17 of said Act which is as follows: `No person, co-partnership or corporation, except as authorized by this Act, shall directly or indirectly charge, contract for or receive any interest, discount, or consideration greater than eight (8) per centum per *816 annum upon the loan, use or forbearance of money, goods or things in action, or upon the loan, use or sale of credit, of the amount or value of three hundred dollars ($300.00) or less.'
"In view of this prohibition in Section 17 of the Act, plaintiff can derive no comfort from the fact that it operates simultaneously (according to the evidence, at the same address and with the same personnel) as a licensee under the Small Loan Law and as a general finance company, because if, as we have held, the transaction of July 26, 1949 was in substance a loan of less than $300.00, plaintiff could not make such a loan except in its capacity as a licensee under the Small Loan Law. It will be observed that Section 17 of the Act last quoted above prohibits anyone or any corporation from lending $300.00 or less at more than 8% interest by way of a direct interest charge, discount or otherwise, except as authorized by the Act.
"It is our opinion that the Legislature of Louisiana in enacting the Small Loan Law intended to and did deal with a special subject matter, to-wit, small loans under $300.00. Its purpose so to do is expressed in the title of the Act itself. The Legislature enacted this legislation because in its wisdom it considered that such loans were in a different category from loans of greater amounts and should be governed by entirely different considerations and rules. In Davis Loan Company v. Blanchard, [14 La.App. 671] 129 So. 413, 415, the Court said: `the purpose of the act is not to limit the profits of the money lender, but to relieve the burden of the indigent borrower.' And in the Davis Loan Company v. Blanchard opinion the Court quoted with approval the following statement from Frorer v. People, 141 Ill. 171, 31 N.E. 395, 399, 16 L.R.A. 492: `Usury laws proceed upon the theory that the lender and the borrower of money do not occupy towards each other the same relations of equality that parties do in contracting with each other in regard to the loan or sale of other kinds of property, and that the borrower's necessities deprive him of freedom in contracting, and place him at the mercy of the lender'.
"Could it be said that the plaintiff, acting as a general finance business, could have a prospective borrower of $250.00 execute a note payable to bearer in the sum of $350.00 and `purchase' the same from the borrower, charging him $12.00 for insurance and 50 cents for recording a chattel mortgage securing the note, and a discount in the amount of $87.50? We think not. And, in that case, would not the real transaction be a loan of $250.00 rather than the discounting, or purchasing at discount, of a $350.00 note? And yet that is exactly in substance what was done in the instant case. In this connection we have observed another portion of Section 17 of the Act which states: `No licensee shall conduct the business of making loans under this Act within any office, room, or place of business in which any other business is solicited or engaged in, or in association or conjunction therewith, if the licensing official shall find that the other business is of such nature that such conduct tends to conceal evasion of this Act and shall order such licensee in writing to desist from such conduct.'
"The importance of this provision to our way of thinking is that the Legislature recognized the opportunities for evasion of the provisions of the Small Loan Law and manifested in the last quoted provision and throughout the entire Act that evasions of the Act were not to be permitted to defeat the real and intended purposes of the Act.
"Holding, as we have done, that the transaction in the instant case is governed by the Small Loan Law, it is apparent that several provisions of said law were violated. We quote Section 12 of the Small Loan Law:
"`Every licensee hereunder may contract for and receive on any loan of money not exceeding three hundred dollars ($300) in amount interest at a rate not exceeding three and one-half (3½) per centum a month on that part of the unpaid principal balance of any loan not in excess of one hundred fifty dollars ($150) and two and one-half (2½) per centum a month on any remainder of any such unpaid principal balance, provided that after the expiration of a period of twelve (12) months following the *817 last contractual installment date the interest on any balance still unpaid shall not exceed eight (8) per centum per annum. For the purpose of computing interest a month shall be considered any period of thirty (30) consecutive days, and a day shall be considered one-thirtieth (1/30) of a month.
"`No licensee shall induce or permit any person, nor any husband and wife jointly or severally, to become obligated, directly or contingently or both, under more than one contract of loan at the same time, for the purpose of obtaining a higher rate of interest than would otherwise be permitted by this section.
"`Interest shall not be payable in advance or compounded and shall be computed on unpaid balances.
"`In addition to the interest herein provided for, no further charge or amount whatsoever for any discount, examination, service, brokerage, commission or other thing or otherwise shall be directly or indirectly charged, contracted for or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for the filing or recording or releasing in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. Interest, discount or charges in excess of those permitted by this Act shall not be charged, contracted for or received, and if any such shall be charged, contracted for or received, the contract of loan shall be void and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever.'
"In the instant case the charge of $12.00 to the defendant Padgett for life insurance was a charge not permitted under the foregoing Section 12. In the case of Davis Loan Company v. Blanchard, supra, the Court struck down a loan because notarial fees were charged the borrower. No discount may be charged a borrower under the provisions of Section 12 on a loan of $300.00 or less. In the instant case plaintiff charged defendant Padgett a discount of $198.12 (although plaintiff allowed him a rebate of $44.88 on the old note).
"The case at bar is very similar to the case of Commonwealth Finance Company v. Livingston, [La.App.] 12 So.2d 44, decided by the Orleans Court of Appeal in 1943. In that case there was a cash loan of $225.00 from plaintiff to defendant, to which there was added a bonus of $12.50 paid by the finance company to a motor company for referring the borrower to the loan company, insurance charges of various kinds in the amount of $34.50, a recording fee of 50 cents, and a discount of $32.58, bringing the total to $305.08, in which amount the borrower executed and delivered to the loan company his note. Thus the purported loan was made to achieve an amount in excess of the $300.00 limit contemplated in the Small Loan Law. In that case the Court, after mentioning the fact that there were many violations, held that only one needed to be considered, namely the $12.50 bonus paid. The Court held that this violation of the Small Loan Law, together with other charges not authorized by the same, vitiated the entire transaction and recovery was denied to plaintiff for any amount of principal, interest or charges whatsoever.
"Plaintiff has cited the case of General Securities Company, Inc. v. Jumonville, 216 La. 681, 44 So.2d 702, as authority for his contention that it is perfectly legal for a finance company to purchase at discount a note payable to bearer and recover the full face amount of the note. The case is not apposite here. In that case plaintiff purchased a $7,022.40 note for the sum of $6,250.00. As pointed out by counsel for defendant in brief, no transaction of less than $300.00 could possibly be read into the event by indirection or otherwise. There was obviously no attempt there to evade the provisions of the Small Loan Law.
"For the reasons hereinabove set forth it is our opinion that the note sued on in this case evidences a transaction in violation of the Louisiana Small Loan Law and that under Section 12 of the Act plaintiff is *818 not entitled to recover any principal, interest or charges therein whatsoever."
The only point which is not covered in the above recitals is embodied in the contention of appellant that the trial Judge did not consider the issue as to whether the new note executed by defendants had the effect of paying off the old loan. On this question we are constrained to conclude that it is comprehended in the consideration of other facts. The trial Judge, in our opinion, correctly found that the whole negotiation was devised and carried out in the nature of an evasion of the circumscriptions of the Small Loan Law. Obviously it was essential to the consummation of this purpose that provision be made to care for the original note. This note was not due or exigible; was in current condition, and accordingly, any device of the parties for the inclusion of this obligation in the new commitment must be considered as having been undertaken in consideration of the entire principal, and, therefore, cannot be contemplated as having a separate and independant purpose and effect.
For the reasons so clearly stated and above set forth in the opinion of the trial Judge the judgment is affirmed at appellant's cost.
KENNON, J., not participating.