119 So.2d 339

H. T. COCHRAN et al., d/b/a Credit Loan Service,

v.

STATE of Alabama ex rel. MacDonald GALLION, Attorney General.

I Div. 849.

Supreme Court of Alabama.

March 24, 1960.

Graham H. Sullivan and Herndon H. Wilson, Mobile, for appellants.

442

MacDonald Gallion, Atty. Gen., and Jos. D. Phelps, Asst. Atty. Gen., for appellee.

MERRILL, Justice.

This appeal is from a decree overruling demurrer to the bill, a decree denying appellants' motion to discharge a temporary injunction, and a decree denying appellants' motion to dissolve the temporary injunction.

The State, on relation of the Attorney General, filed on May 26, 1959, in the Circuit Court of Mobile County, In Equity, a bill of complaint for a temporary and permanent injunction, seeking to enjoin the respondents, H. T. Cochran, Allen D. Shores and Ben Peilen, partners, doing business as Credit Loan Service, and individually from making usurious loans or collecting usurious interest in violation of the statutes of the State of Alabama.

The bill alleged that in making loans, the respondents have charged or received and are continuously and knowingly charging or receiving high and usurious rates of interest greatly in excess of the amount authorized by law to be charged, and that respondents have taken advantage of borrowers in necessitous circumstances who are not advised of their legal rights, and that respondents have systematically and continuously harassed and threatened these borrowers.

The bill follows closely the allegations of the bill in Larson v. State ex rel. Patterson, 266 Ala. 589, 97 So.2d 776, except that it alleges that harsh and harassing collection tactics are employed by respondents.

The bill of complaint was presented to the court and an ex parte injunction was issued under Tit. 7, § 1054, Code 1940.

On June 1, 1959, respondents filed demurrer, motions to dissolve and discharge and an answer, all of which were heard by the court on June 6. Respondents offered affidavits in support of their answer and motions and the State offered affidavits supporting the allegations of the bill. On June 12, the court entered orders overruling the demurrer and denying the motions to

dissolve and discharge but allowed respondents to post a supersedeas bond of $5,000.

Appellants argue that the bill was not properly verified because the affidavit stated that some allegations were averred on "information and belief."

The stating part of the affidavit to the bill reads: "that the facts set forth in said petition are true, except the matters and things averred in said petition on information and belief, which matters and things he verily believes to be true as therein alleged."

The only allegation in the bill based on "belief" is that the "complainant further alleges that it is his belief that the respondents will continue to violate the provisions of the statutes of Alabama set forth above and will continue to exact large sums of money as usurious interest, unless restrained therefrom by order, judgment or decree of this Court." It is difficult to see how future actions could be averred except upon belief. The objection is without merit. Practically the same verification was held sufficient in Berman v. Wreck-A-Pair Building Co., 234 Ala. 293, 175 So. 269.

Also, we have held that a defective verification is not ground for dissolving an injunction unless the complainant fails, when required by the court, to verify the bill by a sufficient affidavit. Greenwood v. State ex rel. Bailes, 230 Ala. 405, 161 So. 498; Forney v. Calhoun County, 84 Ala. 215, 4 So. 153; Jacoby v. Goetter, Weil & Co., 74 Ala. 427.

We think the bill was good as against objections that it was indefinite, that it did not allege a nuisance or that the apprehended nuisance or injury was contingent, conjectural or problematical. Larson v. State ex rel. Patterson, 266 Ala. 589, 97 So.2d 776; O'Dell v. State ex rel. Patterson, ante, p. 236, 117 So.2d 164; Wilson v. State ex rel. Gallion, ante, p. 431, 119 So.2d 337.

Appellants contend that the wording of the injunction is not clear because they are enjoined from violation of a nonexistent section of the Code. The order reads in part " * * * are further enjoined and restrained from violating Title 5, Section 271(b), Code of Alabama 1940, and Title 9, Section 65, Code of Alabama 1940."

There is no codified provision as Tit. 5, § 271(b). This statute first came into law in 1945, and was amended in 1951, and although it is listed in the cumulative pocket part as Tit. 5, § 271(b), it has not been codified and is not a part of the Code of 1940. However, this is a technical matter, and while incorrect in wording, it does not follow that appellants are unable to know or ascertain that they are enjoined from violating the provisions of the 1945 Act as amended by the 1951 Act. Although erroneous, the error is not such as to vitiate the order of injunction.

The only remaining question relates to the use by respondents of credit insurance in connection with the loans. It is obvious that the trial court was influenced by evidence in the affidavits presented by the State concerning the credit insurance practices of appellants because apparent reference is made thereto in the order denying the motion to discharge and the motion to dissolve the temporary injunction.

The affidavit of the president of one of the insurance companies, with whom respondents did business, was that his company receives only 1½ percent of the amount of the loan made to the borrower. The commission to the respondents is 90 to 95 percent of the total premium. Another company received only 5.54 percent of the premium. A former employee of respondents stated in an affidavit:

" * * * The rate of interest was greatly in excess of 8% per year. On a loan of $25.00 for instance the borrower agreed to pay back $32.50 within two weeks. This would be set up on the books to reflect interest charges

of 6% and the balance or the difference between $25.00 and $32.50 would be called insurance. However the insurance company received only 1½% of the total indebtedness. The borrower was seldom told anything about insurance and it was a general practice to throw his carbon copy of any insurance paper into the trash can. * * * The borrower was never asked whether or not he wanted insurance, all we ever told him was how much he owed and how much he was to bring back. If he had refused to sign where he was instructed of course he would not have received any money. The insurance company never received any copy of the borrower's contract or what he signed for the insurance, we only sent them a check for 1½% of the total debt. We would calculate the amount we were to make on a loan, we would call 6% of the loan interest and the remainder would be called insurance, however, as I said before the insurance company only received 1½% of the total indebtedness. The borrower got the $25.00 and was expected to pay back $32.50 within two weeks. * *"

The trial court referred in its order to Grider v. Calfee, 242 Ala. 50, 4 So.2d 474, 475, where it was stated:

"The courts will closely scrutinize every suspicious transaction in order to ascertain its real nature. The law is diligent to discern any artifice, device or scheme to cover up usury. In determining whether the contract is tainted with usury, the court will look to the whole transaction. Lewis v. Hickman, 200 Ala. 672, 77 So. 46; Dawson v. Burrus, 73 Ala. 111; Uhlfelder v. Carter's Adm'r, 64 Ala. 527. It will consider the surrounding circumstances, the occurrence at the time of the making of the agreement, and the instruments drawn. The court will look to and construe the transaction by its substance and effect rather than its form, and if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the plain duty of the court is to inflict the penalty imposed by the statute."

In Tribble v. State, 89 Ga.App. 593, 80 S.E.2d 711, 714, the defendant was convicted of violating the statute relating to usurious interest and failure to secure a small loan license. The borrower was required to take out insurance, but the policy was not delivered to him. The defendant retained 75 percent of the premium charged, and from an escrow account, he drew an additional 10 percent, making a total of 85 percent. On one $50 loan for four months, to be repaid in eight installments of $9.06 each, totaling $72.48, the charges were $1 interest, $.25 policy writing fee, and $21.23 insurance. The court said:

"Our courts have also consistently recognized that, where the profit received by the lender, by whatever name it may be called, and whether lawful on its face, or not, is in reality a contrivance or device to obtain an amount greater than lawful interest, and is made with intent to violate the usury laws, the transaction is illegal, and that the name by which it is called is altogether immaterial. Bailey v. Newberry, 52 Ga.App. 693, 184 S.E. 357; McDaniel v. Bank of Bethlehem, 22 Ga.App. 223, 95 S.E. 724; Bank of Lumpkin v. Farmers' State Bank, 161 Ga. 801, 132 S.E. 221; Fishburne v. Hartsfield Loan & Savings Co., 38 Ga. App. 784, 145 S.E. 495; Knight v. State, 64 Ga.App. 693, 14 S.E.2d 225; Peoples Bank v. Mayo, 61 Ga.App. 877(2), 8 S.E.2d 405. As stated in Southern Loan & Investment Co. v. State, 68 Ga.App. 75, 22 S.E.2d 108: 'In determining whether a contract is usurious the substance of the transaction will be critically examined, for the name by which the transaction is called is wholly immaterial where it appears that its foundation was the

loan of money.; and the question whether one intended to exact usury under cover of a contrivance or device, or whether the charge alleged in the contract was a bona fide one for value received, is for the jury to determine.' Justice Bleckley, in Pope v. Marshall, 78 Ga. 635, 640, 4 S.E. 116, 118, perceptively stated that 'The theory that a contract will be usurious or not, according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance.'

"The practice of requiring a 'tie-in' sale of insurance or some other commodity which the borrower does not need or desire as a condition precedent to a loan has frequently been held usurious in other states. See Carter v. Life Insurance Co. of Virginia, 122 N.C. 338(1), 30 S.E. 341; Miller v. Life Insurance Co. of Virginia, 118 N.C. 612, 24 S.E. 484, 54 Am.St.Rep. 741; In re Graham, D.C., 22 F.Supp. 233; Davis Loan Co. v. Blanchard, 14 La.App. 671, 129 So. 413, 130 So. 472; Home Finance Co. v. Padgett, La.App., 54 So.2d 813, 815; People v. Coleman, 337 Mich. 247, 59 N.W.2d 276; Cockle v. Flack, 93 U.S. 344, 23 L.Ed. 949; Missouri, Kansas & Texas Trust Co. v. Krumseig, 172 U.S. 351, 356, 19 S.Ct. 179, 43 L.Ed. 474; Jernigan v. Loid Rainwater Co., 196 Ark. 251, 117 S.W. 2d 18."

We are not to be understood as condemning all forms of insurance in all cases where loans are made. But the practice of attempting to evade laws against usury by charging and retaining exorbitant insurance premiums as was done here and in the Tribble case is not sanctioned.

Finally, it is the rule in Alabama that upon the hearing of a motion to dissolve, the question of continuing the injunction is largely discretionary with the court, notwithstanding the denials filed by the respondent. West v. State ex rel. Matthews, 233 Ala. 588, 173 So. 46; Slay v. Hess, 252 Ala. 455, 41 So.2d 582. There is no evidence that the court abused its discretion.

Affirmed.

SIMPSON, STAKELY and GOODWYN, JJ., concur.