123 So.2d 24

**James G. NASH, d/b/a Delta Finance Company,**

v.

**STATE of Alabama ex rel. ATTY. GEN.**
**6 Div. 178.**

Supreme Court of Alabama.

Sept. 8, 1960.

Sirote, Permutt, Friend & Friedman, Birmingham, for appellant.

John Patterson, Atty. Gen., J. Noel Baker, Asst. Atty. Gen., and Geo. Peach Taylor, Sp. Asst. Atty. Gen., for appellee.

COLEMAN, Justice.

On May 16, 1957, the State, on the relation of the Attorney General, filed bill in equity praying for temporary and permanent injunction to restrain respondent from making any contract for the loan of money whereby the rate of interest exceeds eight per cent per annum, from collecting on existing contracts where the interest charge exceeds the lawful rate, and from soliciting insurance or transmitting any application for insurance on behalf of the Warrior Life Insurance Company in connection with the loan of money to borrowers from respondent. There is only one respondent named in the bill, although it is alleged that he does business at several places in several company names.

The bill alleges that respondent is engaged in the business of lending money in Jefferson County and has been so engaged for more than twelve months next preceding the filing of the bill; that during said period respondent has been and is "* * * now, deliberately, persistently, continuously and intentionally violating * * * Title 9, Section 60, Code of Alabama 1940, * * *" which fixes the rate of interest by written contract not to ex-

ceed eight per cent per annum; "* * * that the parties contracted with by respondents are largely ignorant of and not advised of their legal rights, and are not financially able to employ counsel to represent them;" that respondent has caused to be incorporated an insurance company, namely, Warrior Life Insurance Company; that out of the 25,000 shares of the capital stock issued by said insurance company, 24,800 shares were issued to respondent and two of his employees; that shortly after formation of said insurance company respondent began the sale of insurance to borrowers and that purchase of said insurance was and is a prerequisite to the obtaining of loans from respondent; that the cost of such insurance sold to borrowers plus interest at a legal rate exactly equals the usurious interest charged to borrowers from respondent prior to formation of said insurance company; that said insurance has no reasonable value to borrowers and has no purpose other than to enable respondent to collect interest greater than the amount allowed by law; and that the sale of said insurance is a subterfuge to evade the usury laws of this state.

The circuit judge set the cause for hearing on the application for temporary injunction. On the day set, respondent's motion for continuance was denied. Respondent filed also a demurrer and a sworn answer. The court refused to hear the demurrer and proceeded to hear testimony on the application for temporary injunction.

After submission, the court entered a decree stating that the court is of opinion that respondent is and has been for more than one year, engaged in the business of lending money in Jefferson County, that "* * * Respondent * * * charged interest * * * prior to July 13, 1956 greatly in excess of the legal rate of interest * * *. On said date Respondent organized an insurance company * * * and * * * began the sale of insurance policies on the lives and health of borrow-

ers * * * that the sale of insurance to such borrowers is a scheme and device to evade the usury laws * * * that Respondent knowingly, continuously and intentionally exacted excessive usurious rates of interest, and has shown a flagrant contempt for the laws of this state.

"The Court is further of the opinion that the Attorney General has the legal right to bring this action for and on behalf of the State of Alabama, for in this case questions of the public welfare of the citizens of this County and of this State are involved. The Court is of the opinion that the continuous and intentional charges of usurious interest is contrary to the public policy of the State of Alabama, and constitutes a public nuisance. This Court has the power and authority to enjoin a public nuisance of the type and character disclosed by the evidence in this case.

"The Court is further of the opinion that the Complainant is entitled to a temporary restraining order pending final determination of the merits of this cause due to the irreparable injury that may result to the State of Alabama and to its citizens if the conduct by the Respondent as disclosed on this hearing is permitted to continue during the pendency of this cause."

The decree enjoined respondent from making any contract whereby the rate of interest on a loan exceeds "8% per annum" and from soliciting insurance on behalf of Warrior Life Insurance Company from borrowers or applicants for loans from respondent and from taking or transmitting any application for insurance in behalf of said company from such borrowers or applicants. Respondent has appealed from that decree.

In Cochran v. State, Ala., 119 So.2d 339, this court held that the laws against usury could not be evaded by charging and retaining exorbitant insurance premiums. We are of opinion that the proof in this case justified the finding that the sale of insurance to borrowers constituted a device to evade the usury laws and appellant's argument that the court erred in so finding is without merit.

We are of the opinion, however, that the court erred in granting the temporary injunction because the appellee failed to prove that the usurious loans were made to "necessitous borrowers," and since the decree must be reversed for that reason, we pretermit consideration of other matters which are without merit or may be obviated in further proceedings.

In Larson v. State, 266 Ala. 589, 97 So. 2d 776, 780, sometimes referred to as the Tide Finance Company or Tide case, this court affirmed a decree granting temporary injunction against a lender of money who deliberately, persistently, continuously, and intentionally charges highly usurious rates of interest on short term small loans made to *necessitous borrowers* who are largely ignorant, not advised of their legal rights, and not able to employ counsel to represent them. The fact that the borrowers were "necessitous" was not an insignificant element of the basis for granting the injunctive relief sought by the state in that case. The opinion in the Tide case quotes at length from the findings of the trial court. We repeat pertinent excerpts from that quotation:

" 'There is no doubt from the testimony that at all times mentioned in the bill the respondents were conducting their lending business in such a way as to deliberately and intentionally exact unlawful interest from their *necessitous borrowers*.

" '* * * All of the borrowers who testified had no assets except their earning power and could not obtain loans from the commercial banks.

\* \* \* \* \* \*

" 'The manner in which the loan company conducted its business of

lending small sums of money, ten to fifty dollars, to *necessitous borrowers* was certainly a nuisance to the public and their way of dealing with their customers has resulted in injury to the public welfare.

\* \* \* \* \* \*

" '\* \* \*. Undoubtedly the manner in which the respondents conducted their business caused *countless necessitous borrowers* to go into the federal debtors' court or take advantage of the bankruptcy act.

\* \* \* \* \* \*

" 'The testimony shows that, *with perhaps one exception, every borrower* applying for a loan was pressed by the need of money for the necessities of life. Sometimes loans were needed to pay past-due rent and prevent eviction; sometimes to provide food for the hungry family of the borrowers; to provide clothing; to pay for utilities; sometimes to pay doctors, medical and hospital bills, and funeral expenses. All through the testimony the proof runs that *practically all* of the borrowers were in needy financial condition, could not get loans from the regular banks and could get money only from a small loan company.

\* \* \* \* \* \*

" 'These actions, and others proved by the evidence in this case, present an evil and repulsive picture of oppression and intimidation; of the exaction from lowly and humble folk of unconscionable and extortionate rates of interest on small loans; of intentional flouting of the wise public policy of the State; of taking unlawful advantage of the necessities of *financially distressed people,* pictures which in their ugliness are hardly shown by any other record found in the books and files of this court. \* \* \*' " (Emphasis supplied.)

[266 Ala. 589, 596, 597, 97 So.2d 776, 780.]

The basis for injunctive relief against a maker of usurious loans was stated in the following quotation set out in the Tide opinion, to wit:

" '\* \* \*. The long-continued subjection of hundreds of *indigent debtors* to the usurious exactions of defendants by keeping them in fear of losing their jobs if they should have the temerity to assert the rights accorded them by the beneficent statutes of this commonwealth presents a situation which cannot be tolerated, and one which quite justifies the institution of this litigation by the state itself. \* \* \*.' " (Emphasis supplied.) [266 Ala. 589, 601, 97 So.2d 787.]

After careful consideration of the testimony in the case at bar, we are of opinion that the proof fails to show that the borrowers from respondent were necessitous. Thirteen affidavits deposing to various loans by respondent to affiants are attached to the bill of complaint. Only four of the thirteen affidavits state any facts tending to show that the affiants were necessitous borrowers. The four affiants depose that they had filed debtors petitions in the bankruptcy court. There are no other facts supporting an inference that borrowers were necessitous. Five borrowers testified ore tenus for appellee. None of the five mentioned his financial status. One of the five worked for the "Social Security Administration" of the "U. S. Government" as a claims examiner and another was 74 years old and had been unemployed for two years.

Twenty affidavits are made exhibits to respondent's sworn answer. Twelve of these state the name of affiant's employer but nothing as to financial status. Two others of these twenty state that loan companies are the only place where affiant could borrow money.

Appellee appears to take the position that it was not incumbent on the state to show that appellant was engaged in lending to necessitous borrowers. In brief on this question appellee states:

"In arguing the strict applicability of the Tide Finance Co. case to the facts of this case, we do not intend for the Court to conclude that a case for injunctive relief cannot be made unless each one of the factors found in the opinion of this Court in the Tide Finance Co. case is alleged and proved in every case. For that reason, we have purposely omitted any argument in this brief in answer to the contention that there was no proof that the Appellants made loans to 'necessitous borrowers.' We do not conceive this to be a vital part of the State's case on application for injunctive relief against a small loan company. A company which makes loans to individuals for no valid purpose cannot escape the powers of a court of equity by proving that none of the borrowers actually needed the money. It should not be, and is not, the duty of the State, when seeking on behalf of its citizens court relief against the oppressive methods of small loan companies, to justify their existence in our society."

As indicated above, we are of opinion that when the state seeks a temporary injunction against a usurious lender, the state has the burden of showing, among other things, that at least a substantial portion of the usurious loans are being made to necessitous borrowers. For the absence of such showing here, the decree appealed from is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.