# Winter v. City Council of Montgomery.

101 649
131 190

*Bill in Equity to Enjoin Sale of Land for Taxes.*

1. *Appeal; decree discharging injunction.*—An appeal does not lie from a decree of a chancellor rendered in vacation discharging an injunction.

2. *Same; what considered when no answer filed to a bill for an injunction, and no grounds for the dissolution are given.*—On an appeal from a decree dissolving an injunction, and the grounds upon which the writ are dissolved are not stated, and there was no answer filed to the bill seeking the injunction, the consideration will be confined to the pleadings of the bill as they appear upon its face.

3. *Taxes; redemption by delinquent payer from purchaser at tax sale.*—Where lands sold for unpaid taxes are redeemed from the purchaser by the delinquent tax payer, they again become subject to the lien for taxes which were delinquent prior to said sale, although as to the purchaser, such sale conferred upon him a clear legal title in fee simple.

4. *Sale of property for taxes; when purchase made in interest of delinquent owner.*—After the rendition of a decree ordering the lands of W. to be sold for the payment of city taxes delinquent prior to 1884, the lands were sold for taxes for the year 1884, accruing subsequently to the taxes embraced in the decree, and bought by T. T. having made default as to the State and county taxes while apparent owner, the lands were again sold, and purchased by the State, and afterwards sold to F. as the grantee of T. W., after redeeming from T., who had purchased as her agent, also redeemed from the heirs of F. *Held*, that the purchase of F. was for the benefit of W., the original owner, and that his title, being built on the defaults of the original owner and her agent, could not free the lands from the lien of the decree ordering the sale of the lands for delinquent city taxes, which accrued prior to 1884.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellant in the chancery court of Montgomery county, on the 5th day of June, 1893, against the City Council of Montgomery, to restrain the collection of taxes on real estate of the complainant by said city.

It alleges, that she is a married woman, and, prior to the year 1887, was the owner of real property in the city of Montgomery, which is described in the bill; that prior to the year 1887, said property was sold for taxes by the tax collector of Montgomery county, and was purchased by him in the name and for the State of Alabama; that afterwards, on the 24th of February, 1888, the Auditor of the State sold said lands to Charles L. Flint, and conveyed to him all the right, title and interest of the State in the same, as shown by his deed attached to the bill. Said deed, after reciting the purchase by the State of said lands, and that "Charles L. Flint, grantee

of the party who owned said lands at the time of said sale, did on the 24th February, 1888, make application to the Auditor of the State to have the tax collector of said county assess the value of said lands, and the taxes on the same for each year between the date of the sale of said lands and the date of said application," and said requirement having been complied with, as provided for by the act of February 28, 1887, concluded as follows : "Now, therefore, I, M. C. Burke, as Auditor of the State of Alabama, in consideration of the premises, and by virtue of the provisions of the act of February, 1887, for the relief of parties whose lands have been sold for taxes, do hereby grant, bargain, sell, alien and convey unto the said Charles L. Flint all the right, title and interest of the State in and to the following described lands,"—describing them. It is further averred in said bill that, prior to the 19th day of February, 1891, said Flint departed this life, and on that date complainant purchased from his widow and his only heirs, who were adults, all the right, title and interest of the said Flint at the time of his death, as acquired by him by his said purchase from the State. Their deed is exhibited to the bill, and purports, in consideration of $1,192.66, to rescind, release and quit-claim to the complainant all their right, title and interest in said lands which had been acquired by the said Flint under and by his deed from said Auditor. Complainant further alleged that about the 1st January, 1884, the City Council of Montgomery filed their bill in the said chancery court of Montgomery against complainant to enforce the collection of taxes alleged to be due to it from complainant on said property, accruing between the years 1873 and 1882, inclusive, and that under said bill, said court, in August, 1884, rendered a decree in that behalf for taxes due before that year, on said lands described in the bill, for the payment of the same, and ordered their sale, if said decree was not paid as directed ; that afterwards, in October, 1885, the city recorder of Montgomery ordered said lots to be sold for taxes due and unpaid to the city for the year 1884, accruing subsequently to the taxes embraced and included in said decree of August, 1884 ; and on the 30th of November, 1885, the clerk of said city council advertised and sold the same, and Sallie G. Thorington became the purchaser thereof, paying the

taxes assessed against them for 1884, and all interest, charges and costs claimed in that proceeding; and said clerk gave to her certificates of purchase, as the statute required, and thereby cut off and destroyed all liens and rights held by said City Council of Montgomery for taxes claimed to be due and delinquent before that time.

It is further alleged by complainant, "that as an act of precaution, and to remove all seeming or actual cloud from her title to said land, in so far as the same was created by the said sale of the City Council of Montgomery to Sallie G. Thorington, she has redeemed the same from said Thorington and now holds the same under her said purchase of all the rights, title and interest of the State of Alabama, through Charles L. Flint by deed as aforesaid from his heirs and devisees, freed from all the taxes, costs and charges now attempted to be set up and enforced by said City Council of Montgomery as aforesaid. Yet, notwithstanding the settlement of said decree of August, 1884, aforesaid, in the manner hereinbefore stated, said City Council of Montgomery is now attempting to enforce and collect the said decree, and has advertised the said property to be sold, for the payment of said decree, on the 5th day of June, 1893."

The bill prayed for a temporary injunction against the execution of said decree, that it be annulled and declared to be of no effect, and that on the final hearing of the cause, the injunction be perpetuated.

From the record it appears, that the bill was sworn to by J. S. Winter before Hon. Jas. J. Banks, judge of the 10th judicial circuit, on the 2d of June, 1893. It further appears he issued his *fiat*, granting the injunction prayed for, on "complainant entering into bond in the sum of $300, payable as provided by law;" and the bill was filed on the 5th June, 1893, at 11 :05 o'clock a. m. The bond was also executed and the injunction issued on that date. On June 17th, 1893, in vacation, the defendant moved the court to discharge and dissolve said injunction, but on what grounds does not appear. On the same day, the complainant having had due notice, the chancellor, at chambers, ordered and decreed that the injunction be discharged, "as having been allowed improperly, in an improper case;" and further decreed that said injunction be dissolved. From this decree the complainant appeals to this court, and assigns as error

the decree discharging and dissolving said injunction.

FARNHAM & CRUM, for appellants, cited *Thorington v. City Council of Montgomery*, 82 Ala. 591, 2 So. Rep. 513; 88 Ala. 548, 7 So. Rep. 363; *Winter v. City Council*, 79 Ala. 481; Burr. on Taxation, 347–8; 2 Desty Texation, 849; Blackwell on Tax Titles, 516; Id., 2d Ed., § 427; *Jones v. Randle*, 68 Ala. 258; *East & West R. R. Co. v. East Tenn. V. & Ga. R. R. Co.*, 75 Ala. 275; *Chambers v. Ala. Iron Co.*, 67 Ala. 353.

BRICKELL, SEMPLE & GUNTER. *contra*.

HARALSON, J.—In the case of *Ex parte Sayre*, 95 Ala. 288, 12 So. Rep. 378, we held that an appeal does not lie from an order of a chancellor made in vacation discharging an injunction. According to that ruling, this case is not before us on appeal from the order discharging the injunction.

The decree of the chancellor, however, not only discharges but dissolves the injunction which had been granted. Its language is, "Upon consideration thereof, * * it is now here ordered and decreed that the said injunction be and the same is hereby discharged, as having been allowed improperly and in an improper case, and it is further ordered, that said injunction also be, and the same is, hereby dissolved." The grounds upon which he dissolved the writ are not stated. Motions to dissolve proceed necessarily, on the one or the other, or both of two grounds—either for want of equity, or on the coming in of the answer under oath, denying the allegations of the bill, on which its equity rests.—Code, § 3532; *E. & W. R. R. Co. v. E. T. Va. & Ga. R. R. Co.*, 75 Ala. 275. There was no answer filed here, and the consideration of the appeal must, therefore, be confined to the equities of the bill as appear on its face.

Coming to the legal principles upon which the question at issue is to be determined, we find little or no disagreement in the text books and adjudicated cases. Mr. Black, supported by a long array of adjudications from many of the States, lays it down, that any person who owes a duty to the State to pay the taxes on a particular tract of land, can not become a purchaser at the sale of the property for such taxes; or, if he should, in form,

buy at such a sale, he does not thereby acquire any right or title to the property better or stronger than what he had before, but his purchase is deemed merely as a mode of paying the taxes, and leaves the title in precisely the position it would have occupied if the payment had been made before, instead of after the land had been put up for sale. So he proceeds : "One who has permitted lots which he holds, to be sold for taxes and purchased by his agent, and who has obtained from the latter a transfer of the certificate of purchase, after the agent has been reimbursed the amount paid upon his bid, by collecting the rents"—or, he might have added, by being repaid such amount in money, by way of redemption of the title—"and has procured from him the tax deeds, for the purpose of strengthening his title to the lots, does not thereby acquire a better title by the tax deeds."—Black on Tax Titles, § 273, and authorities cited; Blackwell on Tax Titles, §§ 566, 581.

It is everywhere conceded to be a legal and a moral duty every good citizen owes the State and the municipality in which he resides, to pay the taxes which are duly and legally assessed against his property. Without this, good government and a due administration of law, in which every one is alike interested, can not be maintained and enforced. The disqualification of one to purchase land at a tax sale, sold for the purpose of collecting the taxes assessed against it, rests upon the principle that he is under a legal and moral duty to pay the taxes. If he can not do this directly, by becoming himself the bidder at the sale, he ought not to be allowed, and can not be, to acquire a valid title indirectly, by procuring another person to do for him what he can not do for himself—to act as the ostensible bidder at the sale, take the certificate of purchase and the tax collector's deed, and assign the title afterwards to the owner on his refunding the money and expenses, and thereby derive any advantage. Such an arrangement, as has been held, if not positively fraudulent, is, at any rate, an attempt to evade the law, to which courts will not lend their countenance. The principle running through all the cases, says Mr. Burroughs, "is that when it is the duty of a party to pay the taxes, he can not acquire a title founded on his own default. * * He can not build a title on his own neglect of duty." In every such instance,

the owner will be construed as intending to discharge his duty by relieving the estate from the incumbrances, by extinguishing a title under a sale his own tardiness and neglect of duty had made necessary.—Burroughs on Tax., 352-354; Black on Tax Titles, § 276; *Donnor v. Quartemas,* 90 Ala. 169, 8 So. Rep. 715; *Thorington v. City Council.* 88 Ala. 548, 7 So. Rep. 363; *Bailey v. Campbell,* 82 Ala. 345, 2 So. Rep. 646; *Jackson v. King,* 82 Ala. 433, 3 So. Rep. 232; *Johnson v. Smith,* 70 Ala. 108 ; *Frank v. Arnold,* 73 Iowa 370 ; *Lindley v. Snell,* 80 Iowa 103; *Varney v. Stephens,* 22 Me. 334.

The complainant, in filing this bill, relies on the principle, that whenever lands are properly sold for unpaid taxes imposed on the lands themselves, the purchaser acquires the fee, (*Jones v. Randle,* 68 Ala. 258 ; Bur. on Tax., § 122) ; that a sale of such lands frees them in the hands of the purchaser from any and all liens thereon for delinquent taxes for former years.—2 Desty Taxation, 849; *Thorington v. City Council, supra.* In the case last cited, it was held that a sale of land for unpaid taxes destroys the lien for prior unpaid taxes, of which no notice was given at the sale, and confers a clear title on the purchaser, if he bought in good faith, for his own benefit, and with his own money and not by fraud or collusion with the delinquent tax payer; but, if the lands are redeemed by the delinquent, they again become subject to the lien for prior taxes. Let us then apply these principles to the facts of this case, as we find them averred in this bill.

For a better understanding of the law and the facts, it is proper to refer to two acts of the legislature, which have an important bearing ; the one, entitled, "An act to regulate the sale of real estate for unpaid municipal taxes in the city of Montgomery," approved February 17, 1885, (Acts 1884–85, p. 767), the 12th section of which provides, "that the certificate of the purchaser under this act, shall authorize the purchaser, or his assignee, to enter upon and maintain ejectment for the possession of the premises sold against the former owner ; * * * and the owner * * * may redeem the same on the terms and conditions prescribed in section nine [of said act] at any time within two years from the time the purchaser enters upon or obtains possession of the property." The other is an act "For the relief of

parties whose lands have been sold for taxes," approved Feby. 28, 1887 (Acts 1886–87, p. 91), which provides that, in all cases where lands have been sold for the non-payment of taxes and purchased by the State, and when the title has never passed out of the State, the parties who own said lands at the date of such purchase by the State, or their grantees or assignees, shall be permitted. to redeem said lands at any time within one year after the passage of the act, upon the payment of the taxes due at the date of said sale, and the expenses of said sale, and the annual taxes from the date of said sale to the date of the redemption of said lands; that any person desiring to redeem lands under the provisions of the act shall make application in writing therefor to the Auditor of the State, and by complying with the terms prescribed therein, that the Auditor shall make a deed to said lands, conveying all the right, title and interest of the State in and to the same to the party purchasing.

The case, on its naked presentation of facts in the bill, is, that complainant in the years from 1873 to 1885 was the owner of the lands described in the bill, and had failed for all these years to pay her taxes to the city of Montgomery. A bill was filed against her by said city in the chancery court of Montgomery, to have a lien declared on said lands for the payment of said unpaid taxes on them; that said court, by its decree, declared a lien on said lands and ordered their sale, if said decree was not paid as directed; that the recorder of the city of Montgomery, proceeding, as we must presume, under said act regulating sales of real estate for unpaid municipal taxes of the city of Montgomery, ordered said lands sold for the taxes due the city for the year 1894, accruing subsequently to the taxes embraced in the decree of said chancery court, at which sale, Sallie G. Thorington became the purchaser, for the amount of the taxes, costs and expenses. and received from the clerk of the city certificates of purchase of the respective lots which were sold. This sale and purchase, it is claimed, cut off and destroyed all liens and rights held by said city for taxes claimed to be due and delinquent before that time, which were included in said decree. Under the principles above referred to, the sale might have had the effect claimed for it; but unfortunately for such a claim,

it is stated in the bill that complainant *has since redeemed said lands from Mrs. Thorington*, which redemption, we hold, was but the discharge by complainant, of a legal and moral duty, and had the effect, to relieve the estate from Mrs. Thorington's title, if it ever existed, by extinguishing her title under that sale, and subjecting the lands to the claim of the city for all of said delinquent taxes. The case stands, therefore, as if Mrs. Thorington had never bid for and received a certificate of purchase and deed from the city to said lands, and the complainant, as to this claim, is remanded to her former relations to the lands. The statements of the bill authorize the inference and indulgence of the fact that Mrs. Thorington was procured to figure in the transaction, as the agent of the complainant.

As to the sale by the Auditor to said Flint, it may be said, on the averments of the bill, that his purchase was in the interest and for the benefit of complainant. He acted as the grantee, certainly, of Mrs. Thorington; for, while the bill fails, in terms, to state the date of complainant's redemption from her, it does state, that she "has redeemed the same [said lands] from said Thorington, and now holds the same under her said purchase of all the right, title and interest of the State of Alabama, through Charles L. Flint by deed as aforesaid from his heirs and devisees, freed from all the taxes, costs and charges now attempted to be set up and enforced by said City Council."

Complainant, then, by refusal to pay her taxes necessitated a sale by the city. Mrs. Thorington, as her agent and for her benefit, bid at said sale, and received complainant's title, which was afterwards redeemed by complainant. While Mrs. Thorington was the apparent owner, *she* made default in the payment of the accruing taxes on said lands to the State and county, and forced the State to sell them for the delinquent taxes, and after this, having gone through the form of a redemption from Mrs. Thorington, complainant redeemed the land from the heirs of Flint, and now claims that she holds them freed from all the taxes of the city from 1873 to 1891, except for such as accrued in the year 1884. Flint's purchase, under the facts stated, we must hold, was in the interest and for the benefit of complainant. His title was built on the defaults of complainant and her

42

[The American Mortgage Co. of Scotland (Limited) v. Wright.]

agent, Mrs. Thorington, and can not be made to sub-
serve the purposes for which it was intended—that of
freeing these lands from the just claims of the city on
them for its taxes. A chancery court will look through
the forms with which the transactions may be clothed,
to their real substance, and to the intention of the par-
ties, and will not willingly allow wrong and injustice to
prevail.

The acts of the legislature, to which we have referred,
allow the purchaser, in each instance, to take possession
and control of the property purchased. So far as we are
informed by the bill, Mrs. Thorington never took pos-
session of said lands from complainant under the pur-
chase, nor did said Flint take possession of them, but
complainant has remained in possession all the while.
While these facts, if not true, are amendable defects, and
would not, of themselves be allowed to determine the
equities of the bill on this appeal, yet, taken in connec-
tion with the other facts averred, they serve to strengthen
the conclusion we reach.

There was no error in the decree of the chancellor dis-
solving the injunction, and it is affirmed.