219 So.2d 634

**MARTIN'S GRILL MEATS, INC.**

**v.**

**RETAIL, WHOLESALE & DEPARTMENT STORE UNION LOCAL #506.**

**7 Div. 726.**

Supreme Court of Alabama.

Feb. 20, 1969.

C. V. Stelzenmuller and Thomas, Talliaferro, Forman, Burr & Murray, Birmingham, for appellant.

Hawkins & Rhea, Gadsden, for appellee.

COLEMAN, Justice.

Complainant appeals from a decree granting a motion to dissolve a temporary injunction.

The proceedings antecedent to the decree were as follows. Complainant filed and presented to the circuit judge its bill of complaint praying for temporary and permanent injunctions. The judge did not grant the temporary injunction on presentation for fiat but set the application for hearing on a day certain as provided for by § 1054 of Title 7, Code 1940.

At this point, complainant abandoned its application to the circuit judge and applied to the justices of this court under § 1060, Title 7, Code 1940, instead of further pressing its application before the circuit judge. This is permitted by the statute. Berman v. Wreck-A-Pair Building Co., 234 Ala. 293, 175 So. 269. Four justices granted the application and ordered the issuance of a temporary injunction, returnable to the circuit court. Complainant filed bond and temporary injunction issued as ordered.

Respondents filed plea in abatement, sworn answer, motion to discharge, and motion to dissolve the temporary injunction. The court set the motion to dissolve for oral hearing, but as we understand the record, the oral hearing was abandoned.

Later, affidavits were filed by both complainant and respondents. We have not found in the record any note of submission by any party as provided for by Equity Rule 57. We do not find in the record any testimony taken orally before the trial court as authorized by Equity Rule 56.

The circuit court rendered a decree which, as pertinent, recites:

"THIS cause having been submitted to the Court on written affidavits of both Complainant and Respondents, as prescribed by law, and Respondents, Retail, Wholesale & Department Store Union, Local #506, AFL–CIO, et al, having moved this Honorable Court to dissolve the injunction heretofore rendered in this cause, on the 19 day of August, 1965, and

"The Court considering said motion and find that there is a lack of equity in the bill as to said Respondents, and

"The Court being of the opinion that said bill does not contain equity as to said Respondents, it is

"THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the motion of Respondents to dissolve the injunction heretofore entered in this cause on the 19 day of August, 1965, shall be and hereby is granted, and

"That said injunction as to Respondents shall be and hereby is in all things dissolved, and cost taxed against the Complainant, collection of which let execution issue."

From the quoted decree, complainant appeals and assigns for error that the court erred in holding that there was no equity in the bill and in dissolving the injunction.

Motions to dissolve proceed necessarily on the one or the other, or both, of two grounds; either for want of equity, or on the coming in of the answer under oath denying the allegations of the bill on which its equity rests. See Winter v. City Council of Montgomery, 101 Ala. 649, 653, 14 So. 659, in which the court cites § 3532, Code 1886, now § 1052, Title 7, Code 1940.

§ 1061, Title 7, Code 1940, now provides that upon hearing of motion to dissolve an injunction, the court may consider the sworn bill and answer, "and also such affidavits as any party may introduce."

In Pennington v. Birmingham Baseball Club, Inc., 277 Ala. 336, 340, 341, 170 So.2d 410, 413, this court said:

"We hold that affidavits may not be considered where there is no answer and where the sole question presented is the sufficiency of the bill as attacked by a motion to dissolve, for such a motion confesses the averments of the bill, whether

well or ill pleaded, and in the absence of an answer lies only where there is a want of equity in the bill. (Citations Omitted) A motion to dissolve an injunction is somewhat similar to a demurrer for want of equity in a bill and, of course, affidavits not made exhibits to a bill could not be looked to to determine the sufficiency of the bill as against the demurrer interposed."

The dissolution of an injunction will be allowed only upon the want of equity in the bill or the denials of a verified answer. Upon motion to dissolve, technical errors are not available. All amendable defects are regarded as amended. D. B. Clayton & Associates v. McNaughton, 279 Ala. 159, 163, 164, 182 So.2d 890. In the last cited case no answer was filed to the bill, nor to the motion to dissolve. The court said:

" . . . . We must therefore look solely to the averments of the bill to determine whether it contains equity. This presents only a question of law." (279 Ala. at 164, 182 So.2d at 894)

As it seems to us, whether an answer be filed or not, the question whether the bill contains equity is a question of law and must be determined solely from the averments of the bill, and affidavits not made exhibits to the bill cannot be looked to in answering the question.

If the averments of the bill are not sufficient to give it equity, then the injunction ought to be dissolved. If, however, the bill does contain equity, then the court comes to the second question and must decide whether the proof sustains the averments which give equity to the bill. It appears from the instant decree that the court held the bill to be without equity and did not reach the second question. If the proof sustains the averments of the bill, then the motion to dissolve ought to be denied. If the proof does not sustain the averments, then the motion to dissolve ought to be granted. We do not here consider the discretionary power which the court has in deciding whether the injunction should be continued or dissolved. Cochran v. State ex rel. Gallion, 270 Ala. 440, 445, 119 So.2d 339, 91 A.L.R.2d 1340.

There is another reason why the affidavits were not available to be considered by the court. Testimony was not taken orally before the court and there is no note of submission. This court has said:

"In view of the fact that appellee did not comply with the requirements of Equity Rule 57, supra, we cannot consider any testimony not so noted, though it may appear in the transcript transmitted to this court, and though no insistence is made by counsel in regard thereto. The decree shows on its face that testimony not noted was considered by the trial court, but this fact does not authorize us to so consider it. It should not have been considered by the trial court. . . . ." Campbell v. Rice, 244 Ala. 144, 146, 12 So.2d 385, 387.

We come then to decide whether the bill contains equity.

Complainant avers that it is engaged in preparation, sale, and delivery of meats and meat products, primarily to hotels, restaurants, and public institutions; that one of respondents is an unincorporated association functioning as a labor union and is exclusive bargaining representative of certain employees of complainant; Respondent Foster is a representative of the union; Respondent Phillips is an employee of complainant and member of the union; other named respondents are also union members; Respondent Davidson is not an employee but is aiding other respondents in the acts complained of.

Complainant avers that it entered into an employment contract with the local union; that negotiations for a new contract broke down and certain employees

represented by the union commenced a strike and remain on strike; that the striking employees are maintaining a picket line at complainant's plant and have engaged in certain activities hereafter set forth; and that since said strike, some of complainant's employees desire to continue working and have, in fact, continued working.

Complainant avers that respondents have entered into a combination or agreement to hinder and prevent complainant from carrying on its business; that in furtherance of said conspiracy, respondents have committed the following acts:

1. They have cursed persons entering and leaving complainant's plant.

2. They have followed vehicles leaving the plant and attempted to run them off the road. A particular incident is averred.

3. They have blocked the entrances to the plant and have let air out of tires of vehicles at the driveway. Particulars are averred.

4. Respondent Vice brought a pistol into the plant, displayed it to one of complainant's employees, and told him everyone on the picket line will have a gun.

5. On occasions, pickets have stood and walked in front of entrances so that it would be impossible to drive out a truck without hitting pickets.

6. A group of pickets threw eggs at an employee of complainant and at the home of a non-striking employee.

7. Respondent Mitchell has carried and brandished a club or stick on the picket line.

8. They have blocked a truck from entering the plant.

" . . . . At this time approximately thirty pickets appeared and began chasing said non-striking employees around the Colonial Stores lot. All of them were brandishing Coca-Cola bottles by the neck and shouting threats. Among these men were respondents Nathaniel Randolph Davidson, Clyde P. Griffin, and Hoyt Davidson. Among other threats Nathaniel Randolph Davidson shouted:

" 'We ought to pull this damn scab out of there and beat him to death with these bottles.'

"At this time the Marhoefer Packing Company driver became afraid and drove off without making delivery of any of the meat. Other of the thirty pickets threatened to kill James William Judah and Houston Rozelle; they told the Marhoefer truck driver they would kill him; they also threatened Benny Hester, a non-striking employee. At this time James William Judah jumped into a company panel or delivery truck to get away and several of these pickets who were chasing him also jumped into cars. The pickets drove their cars so as to block the drive both ahead and behind him so that he was forced to escape by jumping a curb. As he was doing this, respondent Hoyt Davidson who is a member of the Rubber Workers Union employed at the Goodyear plant and who has been picketing and aiding and abetting the pickets and respondent Local Union as herein set out, attempted to head Judah off by driving down East Broad Street in front of him. Whereupon, one of the pursuing pickets struck Judah's truck from the rear and knocked it out into East Broad Street where Hoyt Davidson's Plymouth car drove into the side of it and caved in the door. A passenger who was with Hoyt Davidson, whose name is at this time unknown to complainant, jumped out of the Plymouth and into the cab of Judah's truck and threatened to kill Judah and cursed him. Judah jumped out of the other side of the truck and ran away. Another passenger in Hoyt Davidson's car at this time was striking

employee respondent Clyde P. Griffin, who after the collision ran around chasing Judah in a lively fashion but who later claims to have sustained a back inmury (sic) in this collision."

9. Nails and tacks have been strewn along the road in the entrance of the plant.

10. Pickets, at times, have exceeded thirty in number.

The prayer is to enjoin respondents from coercing or assaulting employees of complainant or others seeking to do business with complainant; damaging property of complainant or its employees; blocking roads; trespassing on complainant's property; picketing, except that two pickets may be allowed at each entrance to the plant; brandishing sticks or other weapons on the picket line; following cars of non-striking employees of complainant; throwing eggs or other projectiles at employees of complainant or on property of complainant; and conspiring to commit the acts which are to be enjoined or ordering or encouraging such acts.

This court has said:

"Striking employees or members of a labor union may not, under the guise of self-protection, use threats, intimidation or violence against or on employers, or on their employees or strangers to induce them to leave or not to enter the service of the employers. (Citations Omitted)

"Where striking employees or members of a labor union combine or conspire maliciously to injure an employer in the operation of his business or where there are suggestions of attempted monopoly, unlawful coercion or intimidation, fraud or threatened violence, judicial restraint by injunction is permissible. (Citations Omitted)"' Shiland v. Retail Clerks, Local 1657, 259 Ala. 277, 280, 281, 66 So.2d 146, 148.

The Supreme Court of the United States has said:

"The issues here are whether, under the circumstances of this case, a state court may enjoin strikers and union representatives from (1) 'threatening, intimidating or coercing any of the officers, agents or employees of [the employer] at any place,' and also 'from obstructing, or attempting to obstruct the free use of the streets adjacent to [the employer's] place of business, and the free ingress and egress to and from [the employer's] property,' and (2) all 'picketing or patrolling' of the employer's premises. For reasons hereafter stated, we conclude that the state court may lawfully enjoin conduct of substantially the first category but not of the second." Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 208, 2 L.Ed.2d 151, 153.

We note that the instant prayer is not to enjoin all picketing. The acts sought to be enjoined cannot, in our opinion, rationally be characterized as peaceful picketing.

Respondents say that "The allegations in the complaint are arguably unfair labor practices under the National Labor Relations Act," and the state has no authority to issue an injunction. On the authority of *Youngdahl*, we are of opinion that the relief sought is not preempted or forbidden to the states.

On looking to all averments of the bill, we are of opinion that the bill as whole shows a right to equitable relief and, therefore, contains equity. The court erred in holding to the contrary.

Accordingly, the decree appealed from is reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and BLOODWORTH, JJ., concur.