Jacob Markowitz, J.
We face on these cross motions the competing claims of a college disrupted by disorderly protest and of students relying on an uncontrovertible right to demonstrate. The Board of Higher Education, in its complaint, seeks permanent injunctive relief, and by its motion, temporary restraint. Defendants counter by motion to vacate the stay in the order to show cause, or its modification, and to dismiss the complaint for failure of underlying support and because in violation of the United States Constitution.
The college concerned is Herbert H. Lehman College of the City University, with an enrollment of 10,000 day, evening and graduate students. Its dean of administration supports plaintiff’s position factually as follows:
At 7:00 a.m., Thursday, April 23,1970, student demonstrators chained the main entrance to Shuster Hall and the library of the college. The demonstrators included defendants Rubain, Luongo and Feit. The chains were cut and the entrance cleared.
By 8:30 a.m., the entrance had again been fully obstructed, this time by metal art objects, a sheet sign and 12 students. The barricade was dismantled.
Six additional attempts to blockade the entrance were made on that day, enlarged to include two entrances to Davis Hall, the science building. In addition, chairs were removed from classrooms to block the corridors of an upper floor of Davis *979 Hall, and students roamed through the third floor of Shuster Hall chanting, “ Strike! Shut it down! ”, shouting into classrooms and pounding on doors with large objects. The latter groups included defendants Stainbeck and Prescott.
Shortly before noon, approximately 65 students entered a large lecture course in G-illet Hall and caused the lecture to abort. In the afternoon, the library was occupied —occupancy continued through the night, long after normal closing hours. During the day food was stolen from the cafeteria and vending machines damaged.
On the following day the acts continued. Shuster Hall was again blockaded by demonstrators and the use of rope and chains. The demonstrators included defendants Cruz and Ott. Twenty persons in the building were forcibly detained and those who sought entrance were prevented from doing so. Once again the entrance was cleared; within two hours they were again obstructed, this time causing the forceable detention of 200 to 300 persons. School functioning came to an end as a consequence.
The defendants other than above named incited and encouraged the activity bringing about this result.
Eventually, on Friday, April 24, the demonstrators left the premises.
On Monday, April 27, occupation of Shuster Hall resumed, accompanied by disruption of classes in other buildings, noisy parades through hallways and noisy gatherings near open classroom windows. Plaintiff thereupon applied for and obtained the order to show cause before me containing the stay; it and the summons and complaint were personally served on defendants Cruz, Reece, Luongo and Feit; the order to show cause was read to the demonstrators; and the demonstrators began to disperse.
While occupation and closure of Shuster Hall terminated Monday afternoon, the demonstration, in less forceful form, continued on Tuesday and Wednesday, including amplified music and “ patrolling ” hallways.
Defendants’ affidavits do not substantially controvert the basics of the picture outlined. They argue, instead, that the stay is too broad in scope; that plaintiff failed to show irreparable injury; that, in fact, cessation of classes resulted from student boycott because of the announced increase in tuition, not disruption, and that the few who wished to attend classes in Shuster Hall could have been accommodated in another building at little expense or injury to plaintiff. The theft and vandalism are described as an isolated incident; nor, say defendants, were they shown to have been involved in the incident. They also *980 state that students remained overnight in the library with the permission of a dean; and further, that at a meeting of the faculty, a motion was adopted urging the president of the college to instruct the Corporation Counsel to discontinue the action.
These issues are not sufficient to rebut plaintiff’s demonstration of its need for preliminary relief. Nor do their affidavits show that plaintiff will not be entitled to permanent relief. Sufficient continuity of the acts complained of has been shown to call for the intervention of a court of equity (Board of Higher Educ. v. Students for a Democratic Soc., 60 Misc 2d 114).
In these days of turmoil, our traditional constitutional safeguards are constantly being tested by an overwhelming emotionalism, which many feel would, if unchecked, obliterate our ultimate ideology — a free society under the rule of law. It would be a simple matter if the protagonists in this case, or any other situation involving civil strife, could be readily classified as being on one or the other side of a given issue. Actually, however, this is not so. What we do have is varied shades of opinion and feeling, with the extremists on either end advocating immoderation and intemperate conduct.
The court is exhorted by defendants to outrightly reject plaintiff’s request for injunctive relief on the ground that its issuance would abrogate a right paramount in our constitutional scheme of things — that of free expression under the First Amendment. But, as Justice Oliver Wendell Holmes aptly put it: “ All rights tend to declare themselves absolute to their logical extreme. Yet all in fact are limited by the neighborhood of principles of policy which are other than those on which the particular right is founded, and which become strong enough to hold their own when a certain point is reached.” (Hudson Water Co. v. McCarter, 209 U. S. 349, 355.)
Thus, the right to dissent, or even to engage in civil disobedience is counterbalanced by the right to pursue uninterrupted studies for the purpose of future development on the part of those to whom course work has some relevance and to whom, even if they might agree in principle with the aims of defendants, prefer dialogue and persuasion to barricades and physical confrontation. As perhaps too often occurs in the existing period of conflict,, establishing a working balance between the right of free speech and the demands of the common need is not a simple task. This much is clear, however: At a given point the individual must give ground in the interests of the entire college community.
One may sympathize with the aims of the students and, indeed, with the dilemma of the faculty enmeshed in a situation so *981 fraught with emotion and impinging on their relationship with the students. But one wonders what consideration was given by the faculty to the aspects of disruption of classes, trespass, obstruction of the entrances of the college, property damage and violence presented to this court. The Board of Higher Education and the dean of administration of the college obviously do not agree with the faculty.
Going beyond this, however, perhaps the time has come to reflect on the need to encompass in such situations — to bring into more active participation — the alumni of universities and colleges. An institution of education barely reflects the thinking of all concerned with its operation when it bases its decisions on the thinking of its faculty and its students alone; when it limits its findings to the call of the moment, excluding its heritage and giving scant attention to the future. All those who care are entitled to be heard — and this would clearly include its alumni. Decisions may not be deemed objective when made solely by faculty and students so personally involved. Failure to call for alumni participation may well result in a distorted conclusion. Conversely, their failure to participate is an abdication of responsibility on the part of the alumni. It may be trite, but it is still true, that the whole is the sum of all of its parts.
Events since the institution of this application have underscored the need for collaborative effort. It is time that all concerned follow the old railroad adage: stop, look and listen ! On the totality of the record before me my conclusions are that the complaint should not be dismissed and that the situation requires immediate hearing so that the dispute may be adequately aired and evaluated on testimony. All allegations in the complaint are deemed denied. The preliminary stay will be continued in the interval, except for the right of the students to peaceably demonstrate. To that extent it is modified. Defendants’ motion is denied, and plaintiff’s application is disposed of in accordance with this decision. Settle order setting the case for immediate trial for a day certain.