G-uy J. Mangauo, J.
The plaintiff moves for a preliminary injunction in an action for a permanent injunction. The defendants cross-move (1) to vacate the temporary restraining order granted on May 11, 1970, and (2) that a hearing he conducted and testimony taken.
The defendants are students and members of the faculty of Brooklyn College, some of whom are members of an unchartered group designated as the Brooklyn College Strike Steering Committee. The moving affidavit of the dean of students of Brooklyn College alleges the following: Commencing with May 5,1970 the office of the president of Brooklyn College was unlawfully occupied by the Strike Steering Committee. On May 6,1970 the leader of the strike committee entered the president’s private office, and announced they were taking it over because its occupancy had symbolic importance. The president was ordered out of his office. An announcement was then made from the balcony outside the president’s office, “This is strike headquarters — in President Kneller’s former office.”
The avowed purposes of the strike are stated in the policy statement of the steering committee. It sets forth national and local demands. The opposing affidavit of one student states “the purpose of the student strike at Brooklyn College which started on May 5th was to educate the college community to the destructive, illegal nature of the United States involvment in Indo-China and its concomitants of brutality and repression in this country of all dissenting groups. ’ ’
As of May 11, 1970 the following offices were inoperative because of occupation by the students or students blocking access: the offices of the president, dean of administration, asso *270 ciate dean of administration, dean of faculties, dean of students, office of college relations, and dean of studies. The students also occupied the office of the superintendent of buildings and grounds, and secured keys to all classrooms and lecture rooms.
On May 6,1970 the students entered the Centrex (central telephone room), stayed for four hours, left because of a bomb scare, attempted to re-enter by a ladder and were repulsed, and finally re-entered on May 7, and remained there.
Examples of breaking in and vandalism were: May 6, broke glass to enter the office of Selective Service Counseling; typewriters were stolen. May 6, a group of 100 students roamed the campus, disrupted activities, knocking on doors, terrorizing occupants; May 7, fire hose cut on fifth floor of Boylan Hall, flooding down to basement; May 8, students attempted to lock faculty members in Whitman Hall when they did not vote on strike issues.
On May 11, 1970 at about 8:00 p.m. the court issued an ex parte temporary restraining order which, inter alia, restrained the defendants from congregating or assembling within or adjacent to plaintiff’s academic or administrative buildings, etc., at Brooklyn College in such manner as to disturb or interfere with the normal activities conducted by the plaintiff, and from employing force or violence or the threat of violence against persons or property on plaintiff’s Brooklyn College campus. The defendants in their opposing affidavits admitted occupation of various offices stated above. It is likewise conceded by both sides that the occupation ended on May 11 at about 11:30 p.m. after the students had been informed that the court had issued a temporary restraining order.
One opposing affidavit of a student states that during the occupation the steering committee was never contacted directly by the president to request that his office be relinquished. Another opposing affidavit of a -student states (a) that the students occupying the office of the superintendent of buildings and grounds discovered the master keys to all locks on the college campus but the keys were not removed from the superintendent’s office; (b) only five administrative offices were occupied and blocked by students; (c) although a glass panel on the door of the office of Selective Service -Counseling was broken, repairmen came immediately to fix it; (d) although there were isolated acts of vandalism students were appointed to clean up and repair the damage; (d) there was no attempt to lock faculty members in Whitman Hall when they did not vote on strike issues; some doors were blocked by students for a short period of time.
*271 The supplemental affidavit of the dean of students asserts that after the issuance of the temporary restraining order the following transpired. On May 12 students unlawfully occupied Gershwin Auditorium and refused to leave when asked to do so. On the same day students, numbering approximately 150, ran through the campus, disrupting meetings which were in progress between students and instructors. On May 13, 1970 students locked arms and blocked entrance to the library, thereby preventing others from entering. On May 14,1970 a number of faculty-student meetings were entered by groups of students who conducted sit-ins and refused to leave.
The facts alleged in the complaint and moving papers and the relief requested are such that, if established, the plaintiff would be entitled to permanent relief (Board of Higher Educ. of City of N. Y. v. Students for Democratic Soc., 60 Misc 2d 114). The factors considered by the court are (1) the prevention of irreparable injury to the plaintiff, (2) the inadequacy of any remedy at law and that injunctive relief will avoid a multiplicity of suits, and (3) the plaintiff has demonstrated a need for preliminary relief. The purpose of a preliminary injunction is to maintain the status quo pending ultimate determination (Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 474; Bachman v. Harrington, 184 N. Y. 458, 464), and the court may fix the status quo that existed anterior to the suit (7-A Weinstein-KornMiller, N. Y. Civ. Prac., § 6301.16). The object of a preliminary injunction is to stop the continuance of the conduct complained of pending trial (International Ry. Co. v. Barone, 246 App. Div. 450, 457) and to prevent irreparable injury pending final judgment (People v. Long Is. R. R. Co., 113 Misc. 700, 703, revd. on other grounds 195 App. Div. 897). The granting of a preliminary injunction does not constitute the law of the case or a determination of the ultimate issues (Walker Mem. Baptist Church v. Saunders, supra, p. 474; Peekskill Coal & Fuel Oil Co. v. Martin, 279 App. Div. 669) or the plaintiff's right to permanent injunction (Bond Stores v. Turner, 262 App. Div. 417). The opposing affidavits do not show that the plaintiff will not be entitled to permanent relief (Board of Higher Educ. of City of N. Y. v. Students for Democratic Soc., 60 Misc 2d 114, supra; Board of Higher Educ. of City of N. Y. v. Rubain, 62 Misc 2d 978). The plaintiff has shown prima facie sufficient continuity of the acts complained of to call for an order enjoining repetition of illegal acts of the type heretofore occurring on the campus (Board of Higher Educ. of City of N. Y. v. Anderson, N. Y. L. J., Oct. 6, 1969, p. 17, col. 4).
*272 The defendants argue that a summary proceeding pursuant to subdivision 10 of section 713 of the Beal Property Actions & Proceedings Law, known as a forceable entry and detainer proceeding, provided plaintiff with an adequate remedy at law. That law was formerly section 1412 of the Civil Practice Act and has been on the books for a long time. The primary purpose of that statute was to prevent landlords from taking the law into their hands and evicting tenants by violence (Fults v. Munro, 202 N. Y. 34, 41).
The remedy at law, to be adequate, must be plain, adequate and complete and must be as practicable and efficient as an equitable remedy (Republic Aviation Corp. v. Republic Lodge No. 1987, Int. Assn. of Machinists, 10 Misc 2d 783, 797). The remedy at law is inadequate when the damages are not capable of measurement or difficult to determine or there would be long delay in its availability (28 N. Y. Jur., Injunctions, § 42). The prevailing rule is that where the rights of parties are clear, the courts should interfere to prevent a violation of the rights, instead of allowing the rights to be violated and the wrong committed, and then remitting the party injured to a remedy at law, many times uncertain at best (Green Is. Ice Co. v. Norton, 42 Misc. 238, affd. 105 App. Div. 331, affd. 189 N. Y. 529). The court concludes that upon all the facts and circumstances the statute would not be an adequate remedy at law.
The defendants contend that the plaintiff has failed to show irreparable injury. The gist of the defendants’ objection may be stated in the words ‘ ‘ mission accomplished ’ ’. They say that since the unlawful occupation has ended,business as usual” at the college was stopped, normal classes were terminated, and damage to plaintiff’s property completed, and hence there is no need for a preliminary injunction. The facts belie these contentions. The court is not assured that the unlawful acts will not continue and be repeated. The most the defendants say is that the unlawful conduct probably will not recur because some students are graduating and the court regards this as insufficient to deny relief.
The current situation at Brooklyn College appears to be as follows. The facilities of the college are open and available to permit students and faculty to meet, to conduct informal instruction for students who want and need it, and for necessary day-to-day administrative work and general planning for further instructional programs. So-called “ liberation ” classes are being conducted. The summer session will begin shortly.
The plaintiff states that it suffered extensive financial loss. Equipment loss is estimated at $6,000. The cost of repair to *273 damaged classrooms, offices and other facilities is estimated at $15,920. Loss of employees’ time is placed at $40,981. And the largest loss, that resulting from lost professional teaching hours, cannot be readily calculated. An injury is irreparable when it cannot be adequately compensated in damages or there is no set pecuniary standard for the measurement of damages (Republic Aviation Corp. v. Republic Lodge No. 1987, Int. Assn. of Machinists, 10 Misc 2d, 783, supra).
The defendants contend that relief should be denied because the plaintiff has unclean hands. This is based on the assertion that the plaintiff has refused to meet and negotiate with the students and has not first made a good-faith attempt to solve genuine and long-standing problems within its own college community. That argument has been rejected (Drysdale v. University of State of New York, 60 Misc 2d 180, 183; Berg Auto Trunk & Specialty Co. v. Wiener, 121 Misc. 796). That a college must negotiate with students is not the law at the present time. The refusal by a college to negotiate with students is not a basis for a denial by a court of equity to restrain unlawful acts. This would amount to giving students a license for any kind of violence, and would force the college to accept negotiation of any and all kinds of demands or suffer the alternative of having its necessary and normal functions disrupted, the rights of others disregarded and its property damaged.
The court can take judicial notice of student unrest on the campuses and colleges of this country (Harte v. Adelphi Umv., 63 Misc 2d 228). The causes are well known and oft repeated. The opposing papers state two additional causes: the extension of the war into Cambodia, and the shooting of college students on the campuses. The situation is chaotic, principally because there are no guidelines between permissible constitutional student protest and unlawful action. The courts have been required to delineate the line between them. The purpose of the First Amendment is not fulfilled if the dialogue is between the frustrated and the deaf. Each college has been left to fend for itself, thus creating a variety of attitudes. A liberal president has been described as unfit, a moderate is viewed with skepticism, and a stern one is regarded as an authoritarian. Students present demands, negotiable and nonnegotiable, reasonable and unreasonable. These are classified according to the attitude of the particular administration, and the results are varied. The college population is in the millions and growing by leaps and bounds. The day is past when college students can be treated as mere puppets to be manipulated at will. It is said that the militants are small in number, but we may not *274 overlook the sympathizers who for one reason or another are not active participants. Students by reason of education know that our society lives under law, and without obedience to it, there would be anarchy. They also know that the alternatives are police action and military force.
The time has come for a fresh approach to the problem. The court suggests that the Legislature enact a Student Relations Act. This act should set forth guidelines and spell out the corresponding rights, duties and obligations of all colleges and students. Grievance and reconciliation machinery should be provided. Decisions should be based on law and facts and not on rhetoric or disruption. The Labor Relations Act, for example, brought stability to employer-employee relations and this was a field with a long history of conflict and violence. The court respectfully suggests that appropriate action be taken by the Governor or Legislature.
The defendant’s cross motion for a hearing on the preliminary injunction is denied. The affidavits and exhibits submitted by both sides are sufficient to enable the court to make a determination as to temporary restraint. The issues involved can be disposed of by an early trial.
The defendants further move to vacate the temporary restraining order on the ground that they were not afforded an adversary hearing on the question of the necessity of the restraints imposed, and rely on Carroll v. Princess Anne (393 U. S. 175). That case is distinguishable. Carroll involved an ex parte temporary restraining order with respect to a rally and “ political speech ” to be held at a subsequent time. Here we have an unlawful occupation, violence, the rights of others being violated, and irreparable injuries to the plaintiff. The court in Carroll recognized “the principle that there are special, limited circumstances in which speech is so interlaced with burgeoning violence that it is not protected by the broad guarantee of the First Amendment” (p. 180). The circumstances here were such as to warrant the issuance of the temporary restraining order. The same motion that is made by the defendants here was denied in Board of Higher Educ. of City of N. Y. v. Anderson (N. Y. L. J., Oct. 6, 1969, p. 17, col. 4).
Finally, the defendants argue that the provisions of the temporary restraining order are too broad. Such an order should be “ couched in the narrowest terms that will accomplish the pinpointed objective permitted by constitutional mandate and the essential needs of the public order” (Carroll v. Princess Anne, supra, p. 183). In the Anderson case (supra) two provisions of the restraining order did not comply with that stan *275 dard. Both provisions found by the court to be objectionable are absent in this order. The defendants say that the geographic reach of the prohibition contained in subparagraph (b) of the second decretal paragraph is not defined. They have overlooked that the order issued stated “ or in the streets immediately adjacent to plaintiff’s buildings.”
The court modifies the temporary restraining order by adding another decretal paragraph thereto to read: u Provided, however, that the defendants may peacefully protest, demonstrate and assemble if the same does not violate the aforesaid provisions.”
The court has been advised that this action has been discontinued as to Ellen Winter, Santo Di Trapani, Jerome Jacob and Jack M. Kaplan.
Accordingly, the defendants ’ cross motions are denied, except that the temporary order is modified as indicated in this decision. The plaintiff’s motion is granted and a preliminary injunction shall issue enjoining the defendants and all others receiving notice of this injunction from:
(a) Congregating or assembling within or adjacent to plaintiff’s academic or administrative buildings, recreation rooms or athletic facilities, or in any corridors, stairways, doorways, and entrances thereof on the campus of Brooklyn College in such manner as to disturb or interfere with normal functions and activities conducted by plaintiff in such place, or to block, hinder, impede or interfere with ingress to or egress from such property by plaintiff’s faculty, administrators, students, employees or guests thereof ;
(b) Creating or broadcasting on plaintiff’s Brooklyn College campus, or in the streets immediately adjacent thereto, any loud or excessive noise that hinders, impedes, prevents or interferes with the conduct of normal functions or activities of the college community;
(c) Employing force or violence, or the threat of force or violence against persons or property on plaintiff’s Brooklyn College campus;
(d) Threatening to do, or inciting, or directing others, or conspiring with others to do any of the above-mentioned acts;
(e) Except, however, that the defendants may peacefully protest, demonstrate, and assemble if the same does not violate the aforesaid provisions.
This matter shall be placed on the Special Term, Part III calendar of this court for trial on a day certain to be fixed in the order to be entered herein, subject, however, to the approval of the Justice there presiding, for determination of the issues *276 raised herein pertaining to plaintiff’s right, if any, to a permanent injunction.
Settle order, also providing for the filing of a note of issue, the payment of proper fees, and the service of -a copy thereof upon the Calendar Clerk.