242 So.2d 658

**UNITED STEELWORKERS OF AMERICA**

v.

**ALABASTER LIME COMPANY, Inc.**

**7 Div. 887.**

Supreme Court of Alabama.

Dec. 3, 1970.

Rehearing Denied Jan. 14, 1971.

Jerome A. Cooper, Benj. L. Erdreich, Cooper, Mitch & Crawford, Birmingham, for appellant.

Gilbert E. Johnston, Hubert A. Grissom, Jr., Birmingham, for appellee.

**490**

MADDOX, Justice.

The sole question presented by this appeal from the lower court's refusal to dissolve a temporary injunction issued *ex parte* in a labor dispute involving picketing is:

Does a court have the power to issue a temporary injunction without a showing that the party against whom the injunction was issued was given notice, either formally or informally, that the application for injunction was going to be presented?

We answer this question in the affirmative and hold that the lower court committed no error under the facts of this case.

Alabaster Lime Company (appellee) is the operator of a lime plant and quarry in Shelby County. Its 48 employees are represented by United Steelworkers of America (hereinafter called "Union"). Alabaster and the Union had a labor agreement which expired on June 5, 1970. Thereafter, a strike was called and picketing commenced and continued. On June 12, 1970, Alabaster filed its verified bill of complaint in the Law and Equity Court of Shelby County and sought a temporary injunction, alleging that on June 9, 10 and 11, 1970, appellants (and other persons unknown) committed the following acts while picketing the plant and quarry of Alabaster:

(1) engaged in mass picketing;

(2) used profane and abusive language to supervisors and other employees seeking ingress and egress at Alabaster's plant;

(3) threw rocks at Alabaster's trucks coming to and from its quarry;

(4) placed roofing tacks and nails on the roadway leading to Alabaster's plant;

(5) attempted to "accost" the superintendent of Alabaster;

(6) threatened with abusive language and bodily harm a representative of a contractor who was entering Alabaster's plant;

(7) threw rocks;

(8) broke the windshield of a pickup truck belonging to a supervisor with a rock, injuring the supervisor, and "persons unknown," hit the supervisor later that same day, away from the picket line.

Upon these facts, the lower court on June 12, 1970, issued a temporary injunction conditioned upon Alabaster posting bond.

The writ of injunction, issued *ex parte,* enjoined mass picketing, intimidation of and interference with persons entering and leaving Alabaster's plant and quarry, and limited future picketing to four persons at Alabaster's plant and quarry.[1]

Appellants moved to have the injunction dissolved, on the ground, among others, that the *ex parte* issuance of an order restraining and limiting what they contend was their First Amendment freedom was erroneous and invalid. Upon the lower court's denial of this motion to dissolve, this appeal was perfected. Appellants asked this court for expedition of the appeal pursuant to Rule 47, which was granted on August 24, 1970. Appellants requested oral argument, and the case was argued and submitted on November 17, 1970, the earliest date said submission could be had under our laws and the rules of this court.

Appellants essentially raise but one issue here—that the injunction is invalid and void because no notice, formal or informal, was given to them prior to its issuance. They rely heavily upon Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968). Since appellants have here narrowed the issue to the question of the issuance of an injunction without notice, either formal or informal, we will limit our opinion to this narrow issue. So limited, we see no necessity to reach the question of the right of peaceful picketing. In fact, Alabaster concedes this is the law, and we have said many times that "peaceful picketing" cannot be restrained. See Hotel & Restaurant Employees Int'l. Alliance v. Greenwood, 249 Ala. 265, 30 So.2d 696 (1947).

■ We think *Carroll,* supra, is distinguishable. *Carroll* involved a temporary restraining order issued *ex parte* with respect to a rally and speech to be held at a subsequent time. Here we have alleged acts of mass picketing, violence and the rights of others being allegedly violated. The Supreme Court of the United States in *Carroll* recognized "the principle that there are special, limited circumstances in which speech is so interlaced with burgeoning violence that it is not protected by the broad guarantee of the First Amendment." (393 U.S. at page 180, 89 S.Ct. at page 351). This distinguishing feature of *Carroll* was recognized in Board of Higher Ed. of the City of N. Y. v. Marcus, 63 Misc.2d 268, 311 N.Y.S.2d 579 (1970) which was an action by the city board of higher education for a permanent injunction with respect to activities of college students in connection with a strike. The court there said that a temporary restraining order issued without notice was lawful, and further held, inter alia, that the board was entitled to a preliminary injunction en-

1. Pertinent parts of the injunction read as follows:

"THESE, THEREFORE, are to Command and strictly Enjoin you, UNITED STEEL WORKERS OF AMERICA, an unincorporated association; LOCAL UNION NO. 7582, United Steel Workers of America, an unincorporated association; JIMMIE LEE WILLIAMS; JAMES A. DAVIS; HAROLD D. CUMMINGS; JIMMY SMITHERMAN; CLAUDE L. CRIM; OSSIE LEE ALLEN; FRANK MILLER, JR.; and A, B, C & D being those individuals who are presently participating in or directing a strike at Complainant's place of business in Alabaster, Alabama, and whose names will be added by amendment when ascertained, from assembling around and about the plant and quarry of Complainant, en masse; from maintaining more than four pickets at the plant and quarry of Complainant; from blocking or otherwise obstructing any entrance · or exit to or from the premises of Complainant; from exercising any physical restraint, coercion, intimidation or force to prevent free ingress and egress to and from the plant and quarry of Complainant, or in any manner impeding or interfering with any motor vehicle approaching or leaving Complainant's plant or quarry'; and from abusing or in any manner interfering with or intimidating persons who seek to enter upon the premises of Complainant, until further orders from this Court, and this you will in no wise omit under penalty, etc."

joining students and others from congregating, assembling, or creating noise so as to interfere with normal functions and activities of the college. From the opinion in *Marcus,* supra, it appears that the geographic reach of the order covered the "streets *immediately* adjacent to plaintiff's buildings." The appellate court modified the temporary injunction by adding another decretal paragraph to read:

"* * * provided, however, that the defendants may peacefully protest, demonstrate and assemble if the same does not violate the aforesaid provisions."

Appellants say *Marcus,* supra, is clearly distinguishable since it involved a student protest amounting to a continuing trespass. We do not so read *Marcus,* but think it stands for the proposition that a temporary injunction can be issued *ex parte* to restrain illegal conduct so long as legal conduct (there, peaceful protest) is permitted. We note the court permitted peaceful protest in *Marcus.* The lower court has here preserved the right of peaceful picketing, although the court did place a limit on the number of pickets.

We have said that the granting of a temporary injunction ordinarily rests within the sound discretion of the judge issuing the injunction. Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281, 239 So.2d 298 (1970); Lukes v. Alabama Power Co., 257 Ala. 590, 60 So.2d 349 (1952). Since the injunction issued here does not enjoin *all picketing,* but only enjoins that type of activity which has been held to be outside the protection of the constitutional guarantee of free speech, we think the holding in the *Carroll* case, supra, is distinguishable. It must be noted that the lower court here specifically granted the appellants the right to peacefully picket. The appellants say that they should have been given notice and an opportunity to be heard since the court's action in *limiting the number of pickets* constituted the prior restraint on free speech which was present in *Carroll.* We can not agree this distinction exists. The lower court only enjoined those acts which, in our opinion, cannot be characterized as peaceful picketing. But since the court allowed peaceful picketing, even in limited numbers, we cannot hold that there was an abuse of discretion in this regard. See Martin's Grill Meats, Inc. v. Retail, Wholesale & Dept. Store Union Local #506, 283 Ala. 584, 219 So.2d 634 (1969).

We do not hold that in every case a temporary injunction can be issued *ex parte.* Neither do we express an opinion as to the action we would have taken had the complaint been presented to us for action. We do hold that the lower court did not commit reversible error here and, therefore, affirm the judgment.

Affirmed.

MERRILL, HARWOOD, BLOODWORTH and McCALL, JJ., concur.